573 So.2d 1248 (1991)
STATE of Louisiana
v.
Bernard JOSEPH.
No. 89-KA-1399.
Court of Appeal of Louisiana, Fourth Circuit.
January 17, 1991.
Writ Denied April 5, 1991.
*1249 Harry F. Connick, Dist. Atty., Brian T. Treacy, James A. Williams, Asst. Dist. Attys., Orleans Parish, New Orleans, for appellee.
Gary W. Bizal, New Orleans, for appellant.
Before CIACCIO, WILLIAMS and BECKER, JJ.
WILLIAMS, Judge.
Defendant, Bernard Joseph, and Marcus Hamilton were indicted on January 14, 1988 for first degree murder, a violation of LSA-R.S. 14:30. Defendant and Hamilton pleaded not guilty. Their cases were severed, and Hamilton was subsequently found not competent to stand trial. A twelve person jury found defendant guilty as charged. Because the jury was deadlocked as to the sentence, defendant was sentenced to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence.
Defendant filed this appeal. The issues before this Court are whether the trial court erred 1) in denying a mistrial under LSA-C.Cr.P. art. 770; 2) in admitting into evidence the typewritten statement which defendant gave to police, which did not contain defendant's prior exculpatory statement; 3) in failing to admit into evidence declarations allegedly made by Hamilton concerning Hamilton's motive for attacking the victim; 4) in admitting hearsay statements made by Hamilton; and 5) in not admitting into evidence a true copy of Hamilton's indictment for the 1986 murder of another person. For the reasons assigned, we affirm defendant's conviction.

Facts
On the evening of December 17, 1987, defendant was invited by Fr. Patrick McCarthy to the rectory of the Blessed Sacrament Church in New Orleans for dinner and to help decorate the Christmas tree. Defendant's half brother, Marcus Hamilton, was temporarily living with Fr. McCarthy because someone had threatened to kill Hamilton as a result of a drug deal. Both defendant and Hamilton had known Fr. McCarthy for several years.
After decorating the tree, defendant ate with Fr. McCarthy and Hamilton. Fr. McCarthy later gave Hamilton the house key to let defendant out and then went upstairs to bed. Defendant and Hamilton stayed downstairs and talked.
Hamilton told defendant he was getting fed up with Fr. McCarthy because Fr. McCarthy had been making sexual advances toward him. Hamilton feared that Fr. McCarthy was going to make him move out of the rectory since he refused the advances.
Defendant prepared to leave, and Hamilton went upstairs to retrieve the key. A short time later, defendant heard Fr. McCarthy scream for help. Defendant ran upstairs to the bedroom and saw Fr. McCarthy on the floor with a gash to his forehead and Hamilton standing over him with a hammer in his hand. Defendant testified that Hamilton was cursing the victim, saying that he was tired of the sexual advances.
Hamilton told defendant to get an extension cord. Defendant did this and bound the victim's hands and feet. Hamilton demanded money, and the victim directed him to a box in the closet. This box was retrieved *1250 by defendant. Defendant untied the victim's feet, and the three of them went into Fr. McCarthy's office, where Hamilton instructed Fr. McCarthy to write out two checks for $500.00.
Defendant and Hamilton returned to the bedroom with Fr. McCarthy. When Hamilton asked what was in another closet, Fr. McCarthy gave him the key. A straw basket containing more money was in that closet. Defendant dumped the money into a bag and re-tied the victim's feet.
Hamilton then told defendant to get another piece of cord and wrap it around Fr. McCarthy's neck. Defendant did this. Defendant testified that Hamilton told him to tie the end of the cord to the bed. When defendant could not find a place to tie the cord, Hamilton wrapped it twice around the victim's feet and pulled it until the victim coughed blood and fainted. Defendant testified that Hamilton then stabbed Fr. McCarthy in the neck. When Hamilton saw that Fr. McCarthy was still breathing, he told defendant to get some salt from downstairs. Defendant got the salt container and poured salt into the victim's nose and throat to stop his breathing.
Defendant and Hamilton took a television set, V.C.R. and other items, loaded them into Fr. McCarthy's Chevrolet Blazer and left the rectory. Hamilton dropped defendant off at home and fled.
On December 23, 1987 defendant turned himself into the police. Hamilton was arrested by F.B.I. agents in Baytown, Texas on December 31, 1987. Prior to trial, Hamilton suffered a stroke and was found incompetent to stand trial.
At trial, defendant testified that he wanted to help Fr. McCarthy but instead participated in the homicide because he was afraid Hamilton would kill him if he refused. Defendant cited past instances when Hamilton got angry and violent and he further testified that in 1986 Hamilton admitted to defendant that he had murdered another individual.
The jury returned a verdict of guilty as charged, and defendant appeals.

Errors Patent
Our review of the record for errors patent reveals none.

Assignment of Error No. 1
First, defendant contends that the trial court erred in failing to grant a mistrial after counsel for the state made a remark within the hearing of the jury which allegedly referred to another crime committed or alleged to have been committed by defendant. Specifically, defendant objects to the following remarks made during the State's examination of its own witness, Detective Elena Cox:
Q. [BY JIM WILLIAMS, D.A.]
Now, in connection with the arrest of Marcus Hamilton, did you also develop other information that led to a second suspect?
A. No, we developed that information prior to his arrest. We developed that from followup investigation from the scene and from the witnesses and through our computer ability.
* * * * * *
Q. All right, Detective Cox, in connection with your investigation which led to the arrest of Bernard Joseph did you cause to run on the police computer accomplices, known accomplices of Marcus Hamilton [sic]?
A. Yes, I did.
Q. And did you come up with the name of Bernard Joseph?
A. Yes, I did.
LSA-C.Cr.P. art. 770 reads, in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible; ....
In the instant case, Detective Cox testified that information leading to the arrest of defendant came, in part, from the police department's "computer ability." The D.A. *1251 then asked Detective Cox whether the computer check involved running accomplices of Marcus Hamilton.
While the word "accomplice" is perhaps suggestive of some wrongdoing, it does not necessarily connote criminal activity. Here, the D.A. did not refer to any particular criminal activity committed by defendant or suggest that defendant had ever been arrested in the past. We cannot say that the simple use of the word "accomplice" by the D.A. amounted to a violation of LSA-C.Cr.P. art. 770(2) mandating a mistrial. Defendant's first assignment of error is without merit.

Assignment of Error No. 2
Next, defendant contends that the trial court erred in admitting defendant's inculpatory typewritten statement where that statement did not contain the oral exculpatory statement which defendant had made just minutes previously.
Detective Marco Demma, New Orleans Police Department Homicide Division, took defendant's statement in the early morning hours of December 23, 1987. Detective Demma testified that defendant was advised of his rights and brought into a closed office for approximately fifteen to twenty minutes. During this time, defendant gave an oral statement exculpating himself. Detective Demma testified that defendant admitted being at Fr. McCarthy's house on the night in question but denied any involvement in the murder, stating that Fr. McCarthy was still alive when he (defendant) left the rectory. Detective Demma then told defendant that defendant's fingerprints had been found at the scene. At this time defendant recanted his story. Defendant was brought to a desk, where Detective Demma typed his inculpatory statement. Detective Demma testified that defendant's statement was not recorded or videotaped because the appropriate equipment was unavailable.
LSA-R.S. 15:450 reads:
Every confession, admission or declaration sought to be used against any one must be used in its entirety, so that the person to be affected thereby may have the benefit of any exculpation or explanation that the whole statement may afford.
The rule enunciated in this statute applies to declarations made at one time or those having some connection with one another. State v. McDonald, 387 So.2d 1116, 1121 (La.), U.S. cert. den. 449 U.S. 957, 101 S.Ct. 366, 66 L.Ed.2d 222 (1980); State v. Guillory, 373 So.2d 133, 135 (La.1979). To satisfy the requirements of R.S. 15:450, it suffices that the substance of the statement be shown. State v. McDonald, 387 So.2d at 1121. See State v. Marmillion, 339 So.2d 788, 793 (La.1976).
The statements in the instant case were made just minutes apart and are sufficiently connected to require use in their entirety under § 450. While defendant's initial exculpatory statement was not recorded or typed, the testimony of Detective Demma sufficiently provided the substance of that portion of the statement so as to adequately comply with § 450. Detective Demma's testimony shows that defendant initially denied participation in the homicide and stated that Fr. McCarthy was alive when defendant left that evening. Moreover, defendant's defense of compulsion was unaffected, as the typed statement also contained defendant's declaration that he acted in fear of his own life. Additionally, Detective Demma was available for cross examination by the defense.
Under these circumstances, we conclude that the trial court did not err in refusing to exclude the typed inculpatory statement where the substance of defendant's previous exculpatory statement was sufficiently shown by Detective Demma's testimony. This assignment of error is without merit.

Assignment of Error No. 3
Next, defendant contends that the trial court erred in excluding the entirety of a statement made by Hamilton, the severed co-defendant, to Dr. Aris Cox. According to defendant, this statement in its entirety was admissible as a declaration against penal interest and would have corroborated his defense.
On May 10, 1988, prior to Hamilton's stroke and resulting incompetency, Dr. Cox *1252 interviewed Hamilton to determine whether he was competent to stand trial. During that interview, Hamilton told Dr. Cox that Fr. McCarthy coerced him into having sex and asked him to do things which made him disgusted and angry. Hamilton stated that he "started feeling funny in his head" and that he "lost it." Without elaboration, he told Dr. Cox that when he came to his senses, Fr. McCarthy was "really fucked up." Hamilton said nothing about defendant at that time.
At defendant's trial, the court held a hearing outside the presence of the jury to determine the admissibility of Hamilton's statements to Dr. Cox. The court ruled that the testimony was admissible. However, the court limited Dr. Cox's testimony in the jury's presence, allowing Hamilton's statement concerning the victim's condition but disallowing any statement concerning the victim's homosexual advances. Defendant argues that this portion of the statement was vital to the defense of justification because it "corroborated (defendant's) version of why the murder occurred and who had a motive to kill the priest" and also showed defendant's fear of Hamilton.
LSA-C.E. art. 804(B)(3) provides an exception to the hearsay rule where the declarant is unavailable and has made a statement against interest. That provision provides:
B. Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
(3) Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.
In the instant case, Hamilton's full declaration concerning the homicide constituted a statement against interest, and the trial court erred in not admitting the statement in its entirety. However, we conclude that the error was harmless because the declaration concerning homosexual advances by the victim was merely cumulative to other testimony in the record. Therefore, this assignment is without merit.

Assignment of Error No. 4
Next, defendant contends that the trial court erred in admitting into evidence the hearsay statement which Hamilton gave in December 1987 to F.B.I. agents in Texas. This statement inculpated defendant, stating that defendant not only poured salt down the victim's throat but also stabbed the victim in the neck and assisted in his strangulation.
At the trial, this statement was introduced through the State's rebuttal witness, Officer Philip Stukes. Defendant objected to the introduction of the statement, maintaining that it was inadmissible hearsay. The State, in turn, argued that the statement was admissible as impeachment evidence against defendant. The trial court overruled defendant's objection and allowed the testimony. This Court denied defendant's Emergency Application for Supervisory Writs, finding "no error in the trial court ruling in light of C.Cr.P. [sic, C.E.] art. 806 of 1989." On appeal, defendant asks this Court to review its earlier ruling, maintaining that defendant was denied his right to confront the declarant.
An appellate court will not reverse its pretrial determination on the admissibility of evidence unless the defendant presents new evidence tending to show that the decision was patently erroneous and produced an unjust result. State v. Taylor, 550 So.2d 712, 718 (La.App. 2d Cir.1989), writ den. 556 So.2d 54 (La.1990). While a different decision on appeal is not absolutely precluded, judicial efficiency demands that great deference be accorded to the earlier decision. State v. Humphrey, 412 So.2d 507, 523 (La.1982) (on rehearing).
LSA-C.E. art. 806 reads in pertinent part:

*1253 When a hearsay statement, or a statement defined in Article 801(D)(2)(c) or (D)(3), has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness.
Here, the defense had previously introduced Hamilton's statement which he gave to Dr. Cox in May 1988. Thus, the testimony as to Hamilton's conflicting December 1987 statement was admissible under Article 806 to impeach the declarant's previous statement. A review of the transcript reveals no new evidence to show that this Court's earlier decision was patently erroneous and produced an unjust result. Accordingly, defendant's fourth assignment of error is without merit.

Assignment of Error No. 5
In his final assignment of error, defendant contends that the trial court erred in not admitting into evidence a true copy of Hamilton's indictment for the 1986 murder of another individual. He argues that the indictment should have been allowed to corroborate his fear of Hamilton in his defense of compulsion and justification as to the armed robbery element of the offense.
Justification defenses are affirmative defenses which must be established by a preponderance of the evidence. State v. Cheatwood, 458 So.2d 907, 910 (La.1984). However, the defense of justification by compulsion is unavailable to a defendant accused of murder. LSA-R.S. 14:18(6). See State v. Glass, 455 So.2d 659 (La.1984), cert. den. 471 U.S. 1080, 105 S.Ct. 2159, 85 L.Ed.2d 514 (1985).
Nevertheless, even if justification by compulsion were available to defendant in the instant case, the record is devoid of evidence that Hamilton ever threatened defendant with death or great bodily harm. See LSA-R.S. 14:18(6).
Moreover, any error in excluding Hamilton's indictment for the 1986 murder was harmless, as there is sufficient testimony in the record showing that Hamilton had previously admitted to defendant that he killed another individual in 1986.
Accordingly, defendant's fifth assignment of error is without merit.
For the foregoing reasons, defendant's conviction is affirmed.
AFFIRMED.