684 So.2d 416 (1996)
STATE of Louisiana, Plaintiff-Appellee,
v.
Robert McCARTNEY, Defendant-Appellant.
No. 96-58.
Court of Appeal of Louisiana, Third Circuit.
October 9, 1996.
Rehearing Denied January 27, 1997.
*419 Charles F. Wagner, Dist. Atty., James M. Buck, Alexandria, for State of Louisiana.
John Michael Lawrence, New Orleans, for Robert Kevin McCartney.
Robert Kevin McCartney, pro se.
*420 Before SAUNDERS, SULLIVAN and GREMILLION, JJ.
GREMILLION, Judge.
Defendant, Robert McCartney, was charged by bill of indictment with first degree murder, a violation of La.R.S. 14:30. On May 25, 1993, defendant appeared in court with counsel and entered a plea of not guilty. On April 4, 1995, the state filed a Motion To Amend Original Bill of Indictment which was granted by the trial court. Defendant waived formal arraignment to the amended charge and entered a plea of not guilty. Defendant's request to represent himself was granted on May 31, 1995, after the trial court warned him of the dangers and disadvantages of self-representation as required by Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). After granting defendant's request, the trial court appointed two attorneys from the Public Defender Board to assist him at trial. Thereafter, defendant filed a Motion to Suppress two statements he made to authorities as well as a videotape reenactment of the crime. The trial court denied defendant's motion and he sought writs with this court. In an unpublished writ opinion, State v. McCartney, 95-888 (La.App. 3 Cir. 9/8/95), this court granted defendant's writ in part, holding that the statements and crime reenactment were made after the defendant requested counsel, therefore the trial court erred in failing to suppress the statements and reenactment. This court noted that the state could still use the statements for impeachment purposes if the defendant testified at trial. On September 12, 1995, defendant's request for a bench trial was granted, which began on September 14, 1995. On September 28, 1995, the trial court found the defendant guilty as charged. Defendant filed a Motion for New Trial which was denied by the trial court on October 3, 1995. Defendant waived the delays and was sentenced to life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. On December 5, 1995, the trial court granted the defendant an out-of-time appeal. Appellate counsel has filed eleven assignments of error and three supplemental assignments of error.

FACTS
On April 2, 1993, the defendant assisted John Price in obtaining a vehicle in order to commit an armed robbery. Defendant had the victim, Dale Deselle, Jr., accompany him and John Price under false pretenses. The victim rode with the defendant in the victim's car, followed by Price in the defendant's car. The three then stopped in the woods near Castor Plunge Road in Rapides Parish. The victim exited his vehicle and voluntarily had his hands bound with duct tape because he thought he was involved in a prank. Price exited the other vehicle and shot the victim five times. Three of the shots proved fatal. The victim's body was then dragged into the woods and the pair left in both vehicles. The victim's body was discovered later the same morning.

ASSIGNMENT OF ERROR NUMBER 1
By this assignment of error, the defendant contends the trial court erred in allowing the state to invoke criminal jurisdiction with an indictment that failed to charge a crucial element of the offense as defined by the Louisiana Legislature. Defendant asserts the amended indictment does not conform with La.Code Crim.P. art. 465(A)(31), (32) because it does not specify which subparagraph of La.R.S. 14:30.1 the state was charging him with. Defendant argues that he requested this information in his bill of particulars and was denied such information. He alleges this resulted in extreme prejudice as he proceeded to trial without being informed of the nature and cause of the accusation against him.
We find no error was committed by the trial court. The amended indictment charging the defendant with second degree murder utilized the short form, which is permitted under La.Code Crim.P. art. 465(A)(32). This court addressed the use of the short form indictment in State v. Doyle, 525 So.2d 1090, 1092 (La.App. 3 Cir.1988), writ denied, 540 So.2d 326 (La.1989):
Although this form of indictment often lacks sufficient information to supply a defendant with information he believes necessary *421 to apprise him of the nature of the charge being levied, it is incumbent upon the defendant to file a motion for a bill of particulars to procure details as to the statutory method by which he committed the offense that he is charged with. See State v. Peterson, 290 So.2d 307 (La.1974).
The record reveals the defendant failed to file a bill of particulars asking the state to designate the underlying felony it intended to prove in developing its prosecution for second degree murder after the indictment was amended. Therefore, the state was not limited in establishing any of the felonies enumerated in La.R.S. 14:30.1. See State v. Baylis, 388 So.2d 713 (La.1980). Additionally, defendant was provided with all police reports, confessions, arrest warrants, witness statements, lab reports, autopsy reports, and expert reports revealing that the defendant and John Price kidnapped the victim in order to obtain his vehicle for use in a bank robbery. Defense counsel and the state also filed a Joint Stipulation stating that a copy of the state's entire file was delivered to defense counsel and "production of this file constitutes full satisfaction of the Motion for Discovery and Inspection, Motion For Bill of Particulars, Motion For Preliminary Examination, and any request for Public Records pursuant to La.R.S. 44.1, et seq." Accordingly, defendant was fully notified of the offense charged and was not prejudiced by the use of the short form indictment.
For the foregoing reasons, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 2
In this assignment of error, defendant contends the trial court erred in holding that his arrest was made with probable cause and in permitting the state to introduce at trial evidence which had been seized as a result of an invalid arrest warrant. Defendant argues that he was illegally arrested without probable cause because the arrest warrant was based on the statement of Terry Price, whose lack of credibility was not made known to the judge issuing the warrant. Defendant feels that the police had a duty to disclose to the judge all contradictory and conflicting testimony given by their source witness.
The Louisiana Supreme Court in State v. Simms, 571 So.2d 145, 148 (La.1990), noted the following:
Probable cause to arrest exists when the facts and circumstances within the officer's knowledge are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); State v. Wilson, 467 So.2d 503 (La.1985). The determination of probable cause, although requiring something more than bare suspicion, does not require evidence sufficient to support a conviction. Probable cause, as the very name implies, deals with probabilities. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). The determination of probable cause, unlike the determination of guilt at trial, does not require the fine resolution of conflicting evidence that a reasonable doubt or even a preponderance standard demands, and credibility determinations are seldom crucial in deciding whether the available evidence supports a reasonable belief that the person to be arrested has committed a crime. Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); State v. Rodrigue, 437 So.2d 830 (La.1983). The determination of probable cause involves factual and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. State v. Ogden and Geraghty, 391 So.2d 434 (La.1980).
Defendant filed a Motion to Suppress his arrest warrant. At the hearing on the motion, defendant argued that certain statements he made to authorities were obtained as the result of his illegal arrest; his arrest being illegal because there was no probable cause to suspect he committed a crime and the source witness was not credible. After hearing the testimony of several witnesses, the trial court denied the defendant's Motion to Suppress.
La.Code Crim.P. art. 202 provides that a warrant of arrest shall be issued when:

*422 (1) The person making the complaint executes an affidavit specifying, to his best knowledge and belief, the nature, date, and place of the offense, and the name and surname of the offender if known, and of the person injured if there be any; and
(2) The magistrate has probable cause to believe that an offense was committed and that the person against whom the complaint was made committed it.
The original arrest warrant and supporting affidavit were introduced into evidence. The affidavit was prepared and signed by Detective Clyde Terral of the Rapides Parish Sheriff's Office and the warrant was signed by Judge Alfred Mansour. The affidavit essentially stated that John Price, John Mitchum, and defendant kidnapped Deselle in order to steal his car, and that defendant shot Deselle to obtain the car and prove himself to the others. The affidavit further stated that Price told his wife that Mitchum shot Deselle. It also stated that defendant told Price's wife that he shot Deselle. At the trial of the Motion to Suppress, Detective Terral stated he received this information from Captain Mike Villard, who in turn received it from Terry Price, the wife of John Price.
Defendant is apparently arguing that Terry Price initially denied any knowledge of the murder when first questioned by authorities. After further questioning, she changed her statement and implicated defendant in the murder of Deselle. Other people, including Tony Wiggins and John Price's father, gave information that led to the arrest of defendant. We note that Judge Mansour was not advised by Detective Terral that Terry Price initially denied any knowledge of the murder.
The "four corners" rule of search warrants does not pertain to arrest warrants, and any information, oral or written, can be considered when issuing the warrant, even if it is not included in the affidavit to the arrest warrant. State v. Spallino, 556 So.2d 953 (La.App. 3 Cir.1990). Probable cause need not be based on an officer's personal knowledge. An officer can act on knowledge supplied by another. See State v. Rudolph, 369 So.2d 1320 (La.1979), cert. denied, 454 U.S. 1142, 102 S.Ct. 1001, 71 L.Ed.2d 294 (1982). When material facts are omitted from an affidavit without an intent to defraud, the reviewing court must add these facts to those originally included in the affidavit and retest the sufficiency of the showing of probable cause. State v. Williams, 448 So.2d 659 (La. 1984).
Captain Villard testified at the hearing on defendant's motion that he was not with Detective Terral when defendant's arrest warrant was obtained. He also could not recall if he told Detective Terral that Terry Price had initially lied to him by denying any knowledge of the murder. Detective Terral stated that Captain Villard did tell him that Terry Price had lied to him; however, this information was not relayed to Judge Mansour.
There did not appear to be an attempt to defraud the issuing judge by Detective Terral. All of the information known to the police at the time of the arrest was sufficient to justify a man of ordinary caution in believing the defendant had committed a crime. Terry Price's contradictory statement, when considered with the facts included in the affidavit, did not negate the existence of probable cause for defendant's arrest. It is not uncommon for many individuals to deny guilty knowledge when first questioned by authorities. When Terry Price eventually stated that she was aware of the murder, her admission became more reliable and trustworthy than her previous statement disavowing any knowledge of the murder, because her statement was a statement against her penal interest. Admissions of criminal activity carry their own indicia of reliability sufficient to support a finding of probable cause. State v. Mena, 399 So.2d 149 (La.1981). Affidavits must be given a common sense and realistic interpretation; and a doubtful or marginal case will be resolved in favor of upholding the validity of the warrant. State v. Babbitt, 363 So.2d 690 (La.1978), citing United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). We find that the affidavit in the present case was sufficient to issue an arrest warrant regardless of Judge Mansour's lack *423 of knowledge of Terry Price's contradictory statement.
For the foregoing reasons, this assignment of error also lacks merit.

ASSIGNMENT OF ERROR NUMBER 3
Defendant contends in this assignment of error that the trial court erred in permitting the state to introduce evidence at trial, specifically evidence seized from the interior of his automobile, which was the product of a warrantless seizure not supported by probable cause. Defendant claims that when he was arrested, his automobile was seized by authorities without a search warrant. Three days later, the police searched the automobile without a search warrant and recovered a brown work glove which was admitted into evidence. Defendant argues that the evidence was not in plain view, that he did not authorize the seizure of the automobile, and that the police did not obtain a search warrant for any physical evidence inside the automobile.
It is well settled that a search conducted without a warrant is per se unreasonable, subject to a few specifically established exceptions. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). A search conducted pursuant to valid consent is one of the well recognized exceptions to the warrant requirement. State Moore, 614 So.2d 145 (La.App. 3 Cir.1993).
Defendant was located by investigators at approximately 2:30 p.m. playing basketball at an elementary school and was immediately arrested based upon the arrest warrant signed by Judge Mansour. Defendant's car was impounded and towed to the sheriff's office. He gave a video-taped statement shortly thereafter that ended at 3:09 p.m., in which he denied any involvement in the crimes he was charged with committing, and told the police they could search his car and his apartment. The trial court ruled that the police were justified in impounding the defendant's car after his arrest, and that defendant's oral consent to search further justified the search of the interior of the car. Defendant also signed a Voluntary Consent to Search form at 1:37 p.m. on April 6, 1993. At that time, Detective Terral went over each and every right listed in the Voluntary Consent to Search form and defendant indicated he understood each right. At no time did defendant indicate he wanted to cease questioning or that he wanted to confer with an attorney. This consent form put in writing the previous oral consent to search and defendant's car was not searched until after the written consent was obtained.
We find that based on both the oral and written consent to search, consent was given freely by the defendant; the search was valid; and any evidence obtained as a result of the search was properly admitted at trial. The ruling of the trial court was correct.
Defendant also contends the search of the automobile was not incident to a lawful arrest as the arrest warrant was wrongfully procured and any consent given to search the vehicle was tainted by the illegal arrest. As stated in the previous assignment of error, defendant's arrest was lawful because it was based upon probable cause. State v. Burton, 416 So.2d 73 (La.1982). It was not a subterfuge for police to obtain access to the car. Therefore, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER 4
Defendant contends the trial court erred in permitting the state to introduce into evidence certain statements he made in violation of his constitutional rights. Defendant specifically argues that certain videotaped statements introduced at trial were made before he signed the waiver of rights form, and that he was promised protection for his girlfriend and family in return for his confession. He claims, therefore, that these statements were not freely given and should have been suppressed by the trial court.
Defendant made four statements to the authorities. In his first statement, on Sunday, April 4, 1993, defendant denied any knowledge of the murder. In his second statement, which began at 5:05 p.m. on April 4, 1993, defendant admitted his part in the murder. Two more statements, as well as a videotaped reenactment of the crime, were made on April 6, 1993. This court, in an unpublished writ opinion, granted defendant's *424 writ in part, holding that the statements given on April 6, 1993, as well as the videotaped crime reenactment, were made after the defendant requested counsel, therefore the trial court erred in failing to suppress the statements.
Defendant hinges the first part of this assignment of error on the statement he made on April 4, 1993. The Interrogation: Advice of Rights form in question was signed and dated April 4, 1993, at 3:45 p.m. At the hearing on defendant's Motion to Suppress, much of the testimony was centered around the inaccuracy of the times listed on the waiver of rights form and the videotaped statement of the defendant. Lieutenant Ronald Wagner of the Rapides Parish Sheriff's Office testified that the advice of rights form lists the time it was signed by the defendant as 3:45 p.m. However, the videotaped statement of the defendant shows the statement ended at 3:09 p.m. Lieutenant Wagner stated that on Sunday, April 4, 1993, the time changed due to Daylight Savings Time and not everyone had changed their watches, which added to the confusion that weekend. He testified that the times are evidently wrong, but he was sure the advice of rights form was read, explained, and signed before the defendant made his videotaped statement. A review of the statement as well as the testimony of Detectives John Faglie and Terral also verified that defendant was read his rights prior to his making the videotaped statement. There was sufficient testimony presented at the hearing on defendant's Motion to Suppress for a rational trier of fact to conclude defendant waived his rights prior to making any statement to the authorities on April 4, 1993. The ruling of the trial court is amply supported by the testimony of the officers and the confusion caused by the inaccurate times does not affect the admissibility of the statement.
Defendant also claims that statements obtained by the police were made because he believed that in exchange for his statements protection would be provided for his girlfriend and family, because he would put them in danger if he made statements that incriminated others. Before the state can introduce a confession into evidence, it is incumbent upon it to affirmatively establish that the statement was not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises. La. Code Crim.P. art. 703(G); La.R.S. 15:451; State v. Freeman, 94-1132 (La.App. 3 Cir. 4/5/95), 653 So.2d 801, writ denied, 95-1156 (La. 10/6/95), 661 So.2d 464. In State v. Jackson, 381 So.2d 485, 486 (La.1980), the court noted that as a matter of federal constitutional law, a confession obtained by "any direct or implied promises, however slight, [or] by the exertion of improper influence" must be considered involuntary and inadmissible. See Bram v. United States, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897). The state has the burden of affirmatively proving that the confession was free and voluntary. Accordingly, it must rebut specific testimony introduced by the defendant concerning factual circumstances which indicate coercive measures or intimidation. State v. Gachot, 609 So.2d 269 (La.App. 3 Cir.1992), writ denied, 617 So.2d 1180 (La.1993), reconsideration denied, 620 So.2d 830 (La.1993), cert. denied, 510 U.S. 980, 114 S.Ct. 478, 126 L.Ed.2d 429 (1993), citing State v. Murray, 546 So.2d 944 (La.App. 3 Cir.1989). The admissibility of a confession is a question for the trial court. Its conclusions on credibility and the weight of testimony regarding the voluntariness of a confession for admissibility purposes will not be overturned on appeal unless they are unsupported by the evidence. Gachot, 609 So.2d at 275.
Defendant claims Detective Keith Perkins of the Rapides Parish Sheriff's Office made certain promises regarding protection for his girlfriend and family in exchange for him making the statements. Detective Perkins testified that he did not make any such promises. Defendant asserted at trial that during his videotaped confession he asked for protection for his girlfriend and loved ones several times, and Detective Perkins replied, "okay."
A review of the transcript of the second statement reveals that defendant asked the interrogator to give police protection to his loved ones after he had begun to confess. Defendant claimed that John Price had "connections" with black men who would hurt his *425 loved ones in retaliation for him telling the police about the crime. However, defendant did not condition his confession on this promise. In fact, defendant admitted that his first statement denying any connection to the murder was false and he confessed to his participation in the murder and other crimes before he asked for protection for his girlfriend. Defendant's requests were vague and not specific about what kind of extraordinary protection the police were to provide. The interrogator said only, "Okay," when defendant would say his loved ones needed protection, but they never discussed nor did the interrogator promise to provide this extraordinary protection.
Even if we were to conclude promises of protection were made, those promises would not affect the voluntariness of defendant's confession since defendant confessed prior to mentioning his family's need for protection. Accordingly, the trial court did not err in finding that no promises were made to defendant in return for his confession, and was correct in finding that defendant voluntarily waived his rights prior to making any statements to the authorities.
For the foregoing reasons, this assignment of error lacks merit.

ASSIGNMENTS OF ERROR NUMBERS 5, 6, 9, & 10
Defendant combined these assignments of error in his brief because they are related. Therefore, we will address them accordingly. Defendant contends the trial court erred in failing to grant his Motion for Mistrial based on Brady violations by the state in failing to comply with pre-trial discovery orders until after trial began; in failing to grant a Motion for Continuance based on the same; in allowing the state to introduce evidence after failing to comply with pre-trial motions for discovery; and in granting defendant a recess of only sixteen hours to inspect evidence admitted in violation of pre-trial discovery orders and Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
Under Brady, due process is violated by the suppression of favorable evidence by the prosecution when the production of such evidence is requested and when the evidence is material to either the guilt or innocence of the accused, regardless of the good or bad faith of the prosecution. In Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), this concept was extended to include evidence that impeached the credibility of the prosecution's witnesses.
Defendant argues the trial court erred in denying his Motion for Mistrial based on the state's late discovery responses. Defendant was not furnished with a copy of a statement he made to Detective Terral until September 19, 1995, six days after trial commenced. The state contends the statement concerns a different incident and has no bearing on the case at hand as it was taken in connection with another investigation. The state made known its intention not to use the statement at trial and only supplied it to defendant out of an abundance of caution.
Defendant sought to use this statement to prove he was coerced into committing the crime. This statement, defendant claims, along with the testimony of Johnny Normand, shows that John Price has forced other people to participate in committing crimes against their wishes. After a review of the statement in question, we conclude that the statement is not inculpatory or exculpatory and would not have benefitted defendant at trial. Defendant's assertion that he was threatened into helping Price murder Deselle is not supported by any evidence other than defendant's own selfserving testimony. We also note that the defense of justification by compulsion is unavailable to a defendant accused of murder. La.R.S. 14:18(6). See State v. Glass, 455 So.2d 659 (La.1984), cert. denied, 471 U.S. 1080, 105 S.Ct. 2159, 85 L.Ed.2d 514 (1985).
Defendant further contends that he was prejudiced by the state's failure to timely provide him with statements made by Tony Wiggins, Terry Price, and several other individuals whom he does not name. Defendant claims he would not have opted for a bench trial if he had been timely provided with the statements he requested. Additionally, defendant argues that sixteen hours was *426 insufficient to review the statements after he received them. The state maintains these statements had been provided to defendant's counsel as well as to defendant. A review of the entire record shows that the substance of these statements was made known to defendant in various pretrial hearings.
Finally, defendant fails to state how these statements would have benefitted his decision to forego a trial by jury. Tony Wiggins' statement allegedly states that he did not know that defendant was present at the murder of Deselle. Terry Price's third statement to authorities admits that her husband pulled the trigger, as opposed to her first statement denying any knowledge of the murder and her second statement naming defendant as the trigger man.
Statements made by witnesses to state agents are generally not discoverable unless they are favorable to the defendant and are material and relevant in determining guilt or innocence. La.Code Crim.P. arts. 718, 723; State v. Marco, 577 So.2d 328 (La.App. 4 Cir.1991). The statement of Tony Wiggins is neither. The statements of Terry Price are not favorable the defendant. At best it could prove John Price was the shooter, but it does not relieve defendant of culpability as a principal to the crime. However, as defendant was provided these statements, even though he might not have been entitled to them, he has suffered no prejudice and any alleged error would be harmless. Additionally, the sixteen hour recess afforded defendant ample opportunity to review the statements in question in light of the fact that he fails to explain why this recess was insufficient to review the statements.
For the foregoing reasons, these assignments of error are without merit.

ASSIGNMENT OF ERROR NUMBER 8
Defendant contends the trial court erred in failing to grant his Motion for Mistrial based on evidence of threats on the life of a witness. During the trial, defendant apparently received a note from an employee of the District Attorney's Office written by Terry Price, which indicated that she had received a telephone call telling her that it would be in her best interest not to testify. Defense counsel moved for a mistrial, which motion was denied by the trial court, which stated that it conducted an in-chambers investigation and determined there was no need for a formal investigation. Terry Price was placed under sequestration and put on standby until defense counsel could interview her.
La.Code Crim.P. art. 775 provides, in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.
A mistrial is a drastic remedy and should be declared only when the accused is unnecessarily prejudiced. The determination of whether prejudice has resulted lies within the sound discretion of the trial court. State v. Smith, 430 So.2d 31 (La. 1983).
We find no error was committed. Terry Price testified as a witness for the prosecution, not defendant. Her testimony was not favorable to defendant, nor does he allege that Price's testimony was altered as a result of the phone call. As noted by the state, this was a bench trial in which the judge could properly weigh the effect, if any, of such a threat upon the testimony of Price. The trial testimony of Price did not vary from her previous statements to authorities. The arrest warrant defendant complains about, which was issued based on Price's statement to the authorities, was issued long before the start of defendant's trial. As such, the phone call allegedly made to her prior to the trial could not have affected the statement she gave to the police, which was used to obtain defendant's arrest warrant.
For the foregoing reasons, this assignment of error also lacks merit.

ASSIGNMENT OF ERROR NUMBER 11
By this assignment of error defendant contends the trial court erred in not granting his Motion for Mistrial. Defendant reiterates *427 the previous arguments contained in Assignments of Error Numbers 5, 6, 9, and 10. In addition, defendant argues he was not permitted to inspect or view the physical evidence in possession of the state. Defendant also argues he was prejudiced by the state's failure to timely produce the police video interview of John Mitchum, whom defendant alleges was wrongly named by Terry Price as being involved in the murder of Deselle.
We have addressed defendant's arguments in his previous assignments of error. Defendant's assertion that he was prejudiced by the state's discovery response, as he would have chosen not to forego a jury trial, is only a bare allegation since he does not assert why an earlier viewing of the video tape of Mitchum would have influenced his decision.
As for defendant's assertion that he was not allowed to inspect or view the physical evidence in possession of the state, defendant fails to state what physical evidence he is referring to nor does he allege any prejudice. The transcript of the hearing on defendant's Motion to Suppress indicates that defendant wanted to view the physical evidence himself. The state objected to turning the evidence over to defendant personally instead of someone who is versed in scientific examination, but did not object to defendant viewing the evidence. The state's response that it would let defendant view the evidence is adequate to comply with the discovery articles. As defendant failed to avail himself of the state's offer, there can be no reversible error. La.Code Crim.P. art. 718; State v. Trahan, 543 So.2d 984 (La.App. 3 Cir.1989), writ granted, 556 So.2d 1252 (La.1990); affirmed, 576 So.2d 1 (La.1990).
Therefore, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER 12
By this assignment of error, defendant contends the trial court erred in finding him guilty of second degree murder where the evidence was not sufficient to support the conviction as charged.
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, rehearing denied, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La.1981). It is the role of the factfinder to weigh the respective credibility of the witness, and therefore the appellate court should not second guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino, 436 So.2d 559 citing State v. Richardson, 425 So.2d 1228 (La.1983).
In order for the state to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt.
La.R.S. 14:30.1 provides, in pertinent part:
A. Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2) When the offender is engaged in a perpetration or attempted perpetration of aggravated rape, forcible rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, drive-by shooting, armed robbery, first degree robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm.
Captain Villard testified that on April 2, 1993, he received notice of a body found on Castor Plunge Road. The victim was partially clothed in purple or blue looking pants and one of the pant's pockets had been ripped off. The victim's hands were bound in front of him with silver duct tape. The victim was identified as Dale Deselle, Jr. The victim was shot a total of five to six times and died as a result of three gunshot wounds to the chest.
The authorities began questioning friends of the victim, starting with Tony Wiggins.
*428 On April 3, 1993, Wiggins called the Rapides Parish Sheriff's Office and stated that he knew who killed Deselle. Based on statements given by Wiggins, arrest warrants were obtained for John and Terry Price. Wiggins did not indicate that defendant was involved in the murder. The Prices were soon located and placed under arrest. When Terry Price was first interrogated, she denied any knowledge of the murder. She later recanted her story and implicated defendant and her husband in Deselle's death.
A warrant was issued for defendant based on the testimony of Terry Price. Defendant was subsequently arrested on April 4, 1993, but he initially denied any knowledge of the murder and gave a statement to that effect. After the authorities told defendant that the Prices had implicated him in the murder, the defendant asked to speak to Detective Perkins. Detective Perkins read the defendant his Miranda warning and had him sign an Interrogation: Advice of Rights form. Defendant then gave a statement in which he confessed his involvement in the murder of Deselle.
In his confession, defendant details how he was approached by Price and Mitchum, who told him that they needed his help in obtaining a car in order to commit a bank robbery. They allegedly told defendant that they would kill his girlfriend if he did not cooperate. Defendant helped them obtain a vehicle but the vehicle was somehow discovered and retrieved before they had a chance to rob the bank. They then requested defendant to obtain another vehicle. Price told defendant that he had spoken to Tony Wiggins who stated that obtaining a car would not be a problem because he knew someone with a car and "the boy [Deselle] was the only one home."
John Price allegedly devised a plan whereby defendant would act like he was having car trouble and obtain Deselle's help. Defendant asked Deselle for a ride. Both defendant and Price had masks on made out of black t-shirts but Deselle knew their voices so they removed the masks. Defendant rode with Deselle while Price followed in his own vehicle. After arriving at Castor Plunge Road, defendant and Deselle exited Deselle's vehicle. Price pulled up behind them and exited his vehicle. Defendant and Price put on gloves and the defendant taped Deselle's hands with duct tape. The tape recovered by authorities from Deselle's hands had traces of the same brown fiber as the brown work glove retrieved from defendant's vehicle. Additionally, blue yarn on the work glove matched the yarn on the victim's pants. Deselle did not resist the pair as the defendant and Price told him they were pulling a joke and that Deselle's friend, Wiggins, was involved.
After taping Deselle's hands, Price allegedly told defendant, "Robert, you do not think I am serious, you do not think I will kill," whereupon he proceeded to shoot Deselle a number of times. One of the bullets recovered was fired from a .41 magnum. Defendant stated that Deselle begged for his life, saying "John please, I ain't done nothing." After shooting Deselle, Price ordered defendant to drag Deselle's body into the woods. Defendant complied, and then drove Deselle's car to a predetermined destination and parked it, whereupon he entered the other vehicle driven by Price. The authorities found Deselle's vehicle exactly where defendant said he left it. Price took all the clothes and gloves with him in his vehicle, except for the one glove found in defendant's car. The pair then went to Price's apartment to spend the night. On the way there, defendant threw the unused roll of duct tape out of the car. The duct tape was recovered where defendant said it was located. A search of the vehicle used by Price turned up a .41 Ruger, brown work gloves, black t-shirts, a black bag containing the victim's keys, and a.45 Haskell automatic, as well as one brown glove and an SKS assault rifle.
Terry Price testified at trial that when defendant and her husband returned to the apartment, defendant stated that they had killed someone. Terry Price also testified that John stated that he did the shooting himself.
John Price, who pled guilty to manslaughter as part of a plea bargain, testified that Wiggins shot Deselle. He also testified that defendant was not involved in the murder *429 but was present. Price adamantly denied shooting Deselle or threatening defendant.
We find the evidence presented at trial was sufficient to prove defendant was guilty as a principal to second degree murder. La.R.S. 14:30.1(A)(1). We also find that sufficient evidence was presented to show defendant was engaged in the perpetration or attempted perpetration of an armed robbery or aggravated kidnaping when Deselle was murdered and, thus, guilty of second degree murder, in violation of La.R.S. 14:30.1(A)(2).
La.R.S. 14:64 provides, in pertinent part:
A. Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
In order to find defendant was engaged in an armed robbery, the state would need to prove under La.R.S. 14:64 that:
1. Defendant intentionally took something of value belonging to another;
2. The thing was taken from the possession of or immediate control of another;
3. Defendant used force or intimidation in order to accomplish the taking; and
4. Defendant was armed with a dangerous weapon.
Defendant's confession provides information which meets the elements of La.R.S. 14:64(A). Price and the defendant intended to take Deselle's vehicle, one way or another, while Price was armed with a dangerous weapon. As a principal, it is not necessary that defendant be armed. State v. Dominick, 354 So.2d 1316 (La.1978).
La.R.S. 14:44 provides, in pertinent part:
Aggravated kidnaping is the doing of any of the following acts with the intent thereby to force the victim, or some other person, to give up anything of apparent present or prospective value, or to grant any advantage of immunity, in order to secure a release of the person under the offender's actual or apparent control:
(1) The forcible seizing and carrying of any person from one place to another; or
(2) The enticing or persuading of any person to go from one place to another; or
(3) The imprisoning or forcible secreting of any person.
We also find defendant was engaged in the perpetration of an aggravated kidnaping in that the victim was forcibly seized and driven to a remote area, albeit voluntarily at first, with the intent to force the victim into cooperating by not attempting to escape, to the advantage of defendant who could not have secured such an advantage from the victim had the victim not fallen for his deception. See also, State v. Foster, 26,143 (La.App. 2 Cir. 12/9/94), 647 So.2d 1224, writ denied, 95-0548 (La. 6/30/95), 657 So.2d 1026.
It is irrelevant whether defendant himself had the intent to kill or inflict great bodily harm upon Deselle as there was sufficient evidence to prove defendant was engaged in the commission of an armed robbery or aggravated kidnapping when Deselle was murdered. Defendant's argument that he was coerced into participating in the crime is not supported by the evidence as defendant had several opportunities to prevent this horrendous crime from occurring. Additionally, as noted previously, the defense of justification by compulsion is unavailable to a defendant accused of murder. La.R.S. 14:18(6). Defendant tries to circumvent this line of statutory law and jurisprudence by arguing that he was coerced into the kidnapping of Deselle and the armed robbery of his vehicle, but not the actual murder. We note that the defendant in State v. Joseph, 573 So.2d 1248 (La.App. 4 Cir.1991), writ denied, 577 So.2d 31 (La.1991), tried this same "back door" reasoning to no avail. Additionally, defendant in the present case, as in Joseph, never presented any evidence that he was personally threatened with death or great bodily harm.
For the foregoing reasons, this assignment of error lacks merit.

*430 ASSIGNMENT OF ERROR NUMBER 13
Defendant contends the trial court erred in permitting him to represent himself at trial. He analogizes himself to the defendant in State v. Dupre, 500 So.2d 873 (La. App. 1 Cir.1986), writ denied, 505 So.2d 55 (La.1987). In Dupre, the appellate court reversed the defendant's conviction as the record did not indicate the defendant's waiver of the right to counsel was intelligently and voluntarily made, thus, the court was unable to determine if the defendant's decision to represent himself was a clear and unequivocal choice.
Defendant, citing State v. Penson, 630 So.2d 274 (La.App. 1 Cir.1993), contends that the "hybrid" representation that occurred at trial presented occasions where co-counsel's role was in conflict with the defendant's request to participate in his own legal representation. As stated in Penson:
Although a trial court is not prohibited from using hybrid arrangements, such arrangements present inherent difficulties. If the defendant has not waived the right to counsel and the attorney provides only partial representation, the issue of whether or not the accused was afforded adequate legal representation might be raised. If the accused has adequately waived his right to counsel, but counsel actively participates in the defense, questions of violation of the accused's right to self-representation might result. See State v. Dupre, 500 So.2d at 878. These hybrid representation issues arise when the arrangement allowed by the trial court falls somewhere between counsel providing the entire legal defense and the defendant acting as his only legal representative.
State v. Penson, 630 So.2d at 277.
A defendant may waive his sixth amendment right to counsel and choose to represent himself. However, he must be made aware of the dangers and disadvantages of self-representation. Faretta, 422 U.S. 806, 95 S.Ct. 2525; State v. Carpenter, 390 So.2d 1296 (La.1980). Although a defendant does not have a constitutional right to be both represented and representative, the trial court may appoint counsel to assist a defendant who chooses to represent himself. See State v. Bodley, 394 So.2d 584 (La.1981). "The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).
In the present case, George Higgins, defendant's retained counsel, filed a Motion to Withdraw as counsel of record, as defendant felt the need to represent himself. Before allowing defendant to do so, the trial court and the state conducted a lengthy examination of defendant. It was determined that defendant was twenty-four years old and had three semesters of college in a criminal justice curriculum. Defendant was made aware he would have to file his own motions and make his own objections. The state questioned defendant as to whether he was familiar with evidentiary rules such as the hearsay objection. After the state finished with its questioning, the trial court determined that defendant made a knowing, intelligent, and voluntary waiver of his right to counsel and was capable of representing himself. Finally, on June 20, 1995, the trial court referred defendant to the Public Defender Board for assistance in his upcoming trial. Defendant thereafter represented himself at trial with the assistance of two court appointed attorneys.
We find the trial court correctly determined that defendant was capable of representing himself. Defendant was adequately apprised of the dangers and disadvantages of self-representation and chose to represent himself. Accordingly, the present case can be distinguished from Penson, 630 So.2d 274 and Dupre, 500 So.2d 873. Further, defendant should not now be able to allege the trial court erred in allowing him to represent himself simply because the verdict returned was unfavorable. A defendant who represents himself cannot complain on appeal that his defense was inept. State v. Rinehart, 544 So.2d 1281 (La.App. 4 Cir.1989). The defendant also fails to show that appointed counsel's role was in conflict with his request to participate in self-representation.
*431 For the reasons set forth above, we hold this assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER 14
Defendant contends the trial court erred in not granting his Motion to Enforce Plea Agreement. Prior to trial, the state offered to allow defendant to plead guilty to manslaughter and receive a twenty year sentence. Subsequent discussions involved an eighteen year sentence. The assistant district attorney handling the prosecution left the District Attorney's Office and a new assistant district attorney was appointed. The new assistant district attorney refused to enter into a plea bargain with the defendant. A dispute arose over the cut-off time limit of the state's original offer.
Defendant filed a Motion to Enforce Plea Agreement on September 11, 1995. A hearing was held on the same date. The trial court, after viewing the various exhibits and hearing the testimony of the witnesses, found the Motion to Enforce Plea Agreement to be without merit. It was determined at the hearing that Higgins, defendant's retained attorney, informed the defendant that "all deals were off" if he refused to accept the plea bargain originally offered by Assistant District Attorney Clifford Strider before defendant's case was transferred to Assistant District Attorney James Buck. Additionally, it was determined that defendant, after being informed of the second plea bargain offer of eighteen years, told his attorney he would accept a plea bargain of nine years, a counter offer to the state's eighteen.
In State v. Louis, 94-761 (La. 11/30/94), 645 So.2d 1144, the court set the standard by which the enforcement of plea bargains should be evaluated. The court held that in determining the validity of contracts not to prosecute or of plea agreements, courts generally refer to contract law because contractual principles may be helpful by analogy in deciding disputes involving plea agreements. However, in finding that "plea agreements are constitutional contracts," the court found that "the criminal defendant's constitutional right to fairness may be broader than his or her rights under contract law." Louis, 645 So.2d at 1148. In the instant case, we must look by analogy to contract law to determine if a contract was agreed upon. We note that a contract is formed by the consent of the parties, which consent is established by an offer and acceptance. La.Civ.Code art. 1927. Consent is, therefore, an essential element of a contract. In the instant case, defendant did not accept the offer made by the state. Notwithstanding that the original offer was withdrawn by the state before defendant accepted it, he was still negotiating with the state after the state no longer wished to enter into a plea agreement. The state did not consent to defendant's last offer of nine years in exchange for his agreement to plead guilty to manslaughter. Finally, we find that defendant's constitutional right to fairness was not violated. Defendant made no agreement with the state to give up any of his constitutional protections in exchange for leniency. The plea negotiations were merely an attempt to plead to a reduced charge for a determinate sentence. These negotiations failed.
For the reasons set forth above, we also find this assignment of error to be meritless.

ERRORS PATENT
La.Code Crim.P. art. 920 provides the scope of review on appeal, as follows:
The following matters and no others shall be considered on appeal:
(1) An error designated in the assignment of errors; and
(2) An error that is discoverable by a mere inspection of the pleadings and proceedings without inspection of the evidence.
In accordance with this article, all appeals are reviewed for errors patent on the face of the record. After review, this court notes two errors patent on the face of the record.
La.Code Crim.P. art. 880 provides that when imposing a sentence, the court shall give the defendant credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence. The record indicates the trial court did not do so. La.Code Crim.P. art. 880 applies to life sentences. State v. Howard, 626 So.2d 459 (La. *432 App. 3 Cir.1993). Thus, the sentence shall be amended to reflect that defendant is given credit for time served prior to the execution of the sentence. See La.Code Crim.P. art. 882 A. Resentencing is not required; however, this case is remanded in order for the trial court to amend the commitment and minute entry of the sentence to reflect that defendant is given credit for time served. State v. Moore, 93-1632 (La.App. 3 Cir. 5/4/94), 640 So.2d 561, writ denied, 94-1455 (La. 3/30/95), 651 So.2d 858.
La.Code Crim.P. art. 930.8 provides that at the time of sentencing the trial court shall inform defendant of the prescriptive period for post-conviction relief. The record shows the court did not inform defendant. This defect has no bearing on whether the sentence is excessive and thus is not grounds to reverse the sentence or remand the case for resentencing. La.Code Crim.P. art. 921. The three year prescriptive period does not begin to run until the judgment is final under La.Code Crim.P. art. 914 or 922, so prescription is not yet running. The purpose of the notice of Article 930.8(c) is to inform defendant of the prescriptive period in advance; thus, the district court is directed to inform defendant of the provisions of Article 930.8 by sending appropriate written notice to the defendant within ten days of rendition of this opinion and to file written proof that defendant received the notice in the record of the proceedings. See State v. Fontenot, 616 So.2d 1353 (La.App. 3 Cir.), writ denied, 623 So.2d 1334 (La.1993).

CONCLUSION
The conviction and sentence of the defendant, Robert McCartney, is affirmed. The trial court is ordered to amend the commitment and minute entry of the sentence to reflect that defendant is given credit for time served and to inform the defendant of the prescriptive period for post-conviction relief.
AFFIRMED AND REMANDED WITH INSTRUCTIONS.