630 So.2d 274 (1993)
STATE of Louisiana
v.
Michael Hamp PENSON.
No. 92 KA 2232.
Court of Appeal of Louisiana, First Circuit.
October 15, 1993.
Rehearing Denied December 6, 1993.
*275 Jason P. Lyons, Asst. Dist. Atty., Houma, for plaintiff and appelleeState of Louisiana.
Gregory J. Schwab, Houma, for defendant and appellantMichael Hamp Penson.
Before CARTER, GONZALES and WHIPPLE, JJ.
CARTER, Judge.
Defendant, Michael Hamp Penson, originally was charged with one count distribution of cocaine, a violation of LSA-R.S. 40:967(A)(1). After defendant pled not guilty, the state filed an amended bill of information charging defendant with two counts distribution of cocaine. Defendant again pled not guilty and was granted the right to be recognized as co-counsel. After trial by jury, he was convicted as charged. The state then charged defendant with being a fourth felony habitual offender. See LSA-R.S. 15:529.1. After a hearing, the trial court adjudicated defendant as a fourth felony habitual offender and sentenced him, as an habitual offender, on each count to serve a term of life imprisonment, to run consecutively. Defendant has appealed, urging seven assignments of error.

FACTS
On two separate dates in 1990, defendant distributed cocaine to undercover narcotics agents in Terrebonne Parish. On the evening of March 27, 1990, Deputy Cashius Myles (from another parish) assisted the Terrebonne Parish Narcotics Strike Force. After talking to several men at a local bar, Myles, accompanied by a confidential informant, met defendant at a residence. Myles *276 told defendant that he wanted to buy some "rock" cocaine and asked for the cost. Defendant replied that he had some crack for sale and that the price would be $20.00. Myles then bought two pieces from defendant, paying $40.00. After the purchase, Myles gave the cocaine to Terry Legendre, an agent with the Terrebonne Parish Sheriff's Office. During the offense, Myles wore a body transmitter, and Legendre monitored the conversations.
On the evening of May 9, 1990, Deputy John Jackson (also from another parish) accompanied a confidential informant to Ham's Lounge in Houma. At the lounge, the informant introduced Jackson to defendant. When Jackson told defendant that he wanted to buy twenty dollars worth of cocaine, defendant told Jackson to follow him. Defendant went behind a car and pulled out two small packages of cocaine powder, informing Jackson that each package would cost $10.00. Jackson gave defendant the money, and defendant gave Jackson the two packages of cocaine. Jackson later released the cocaine to Pat Babin, an agent with the Terrebonne Parish Narcotics Strike Force who had been monitoring the purchase.

WAIVER OF RIGHT TO COUNSEL
In the third assignment of error, defendant argues that the trial court did not adequately determine whether he knowingly and intelligently waived the right to counsel when the trial court allowed him to participate as co-counsel.
A few months before trial, defendant filed a pro se motion requesting that he be recognized as co-counsel. The court granted the motion in chambers. Prior to trial, defendant's involvement as co-counsel consisted of the filing of two pro se motions: a motion for continuance (which alleged that defendant's appointed attorney was not prepared for trial and indicated defendant's desire to hire his own attorney) and, after denial of the motion for continuance, a motion to remove his attorney and have new counsel appointed. At the hearing held on the motion to continue, defendant argued, among other things, that he had not "actively prepared a defense ... along with the help of [his attorney]." In the motion to remove his attorney, defendant claimed that he had not received effective assistance of counsel because his attorney had not filed a motion to recuse the judge, had not filed writs on the denial of some pretrial motions (motion in limine, motion to identify confidential informant, and motion for continuance), and had not objected to the court's rulings on these motions. Defendant also asserted that his attorney had collaborated with the assistant district attorney and the judge to "sell him out." On the same day, counsel filed a motion to withdraw as counsel, alleging conflicts with his client. The basis of counsel's motion to withdraw was that the disagreements between counsel and defendant hampered counsel's ability to zealously represent his client. The trial court denied defendant's motion to remove his attorney and the attorney's motion to withdraw as counsel.
Prior to the opening statements, defense counsel asked the court whether both he and defendant could present an opening statement. The court agreed, but warned defendant that he was "treading on very, very, shaky ground." The court suggested that defendant allow his attorney to review the prepared statement and cautioned defendant that he would have to live with any mistakes he might make. In addition to presenting part of the defense's opening statement, defendant conducted part of the cross-examination of the two undercover narcotics agents. Defendant also moved for a "continuance" during the trial and offered arguments relative to his claim that the tape recording of one of the drug transactions was made illegally. Near the end of the trial, when counsel moved for a mistrial on the ground that a witness had violated the sequestration order, defendant offered additional arguments on this issue. Although defendant initially indicated his desire to present a closing argument, after discussions in court, he changed his mind. After the trial, defendant voiced some arguments during a hearing held on post-trial motions filed by his attorney.
Both the federal and state constitutions guarantee the accused in a criminal proceeding the right to assistance of counsel. U.S. Const. amend. VI; LSA-Const. art. 1, *277 § 13. The federal constitution further grants an accused the right of self-representation. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). A defendant who exercises the right of selfrepresentation must knowingly and intelligently waive the right to counsel. Although no minimum requirements have been established for judging the sufficiency of a waiver of counsel, there must be a sufficient inquiry to establish on the record a knowing and intelligent waiver under the overall circumstances. See State v. Strain, 585 So.2d 540, 542 (La.1991). This court previously has suggested that a trial court conduct a detailed inquiry into the dangers and disadvantages of self-representation and defendant's intellectual capacity to determine if a defendant's waiver is voluntary and intelligent. State v. Dupre, 500 So.2d 873, 877 & 879-80 n. 4 (La.App. 1st Cir.1986), writ denied, 505 So.2d 55 (La.1987).
When a defendant has exercised his right to self-representation, the court may appoint "standby counsel" to aid the defendant and to be available to represent the defendant in the event the right of selfrepresentation is terminated. See Faretta, 422 U.S. at 834 n. 46, 95 S.Ct. at 2541 n. 46. When the trial court allows this kind of arrangement, the defendant acts as his only legal representative, and counsel merely advises the defendant. When an attorney is appointed as an advisor under these circumstances, the accused must knowingly abandon his right to be represented by counsel. State v. Dupre, 500 So.2d at 877.
While a defendant has the right to counsel as well as the right to self-representation, he has no constitutional right to be both represented and representative. State v. Bodley, 394 So.2d 584, 593 (La.1981). See also McKaskle v. Wiggins, 465 U.S. 168, 183, 104 S.Ct. 944, 953, 79 L.Ed.2d 122 (1984) ("Faretta does not require a trial judge to permit `hybrid' representation of the type [petitioner] was actually allowed.") Under a "hybrid" form of representation, the defendant and counsel act as co-counsel with each speaking for the defense during different phases of the trial. See W. LaFave & J. Israel, Criminal Procedure § 11.5(f), at p. 51 (1984 & Supp.1991).
Although a trial court is not prohibited from using hybrid arrangements, such arrangements present inherent difficulties. If the defendant has not waived the right to counsel and the attorney provides only partial representation, the issue of whether or not the accused was afforded adequate legal representation might be raised. If the accused has adequately waived his right to counsel, but counsel actively participates in the defense, questions of violation of the accused's right to self-representation might result. See State v. Dupre, 500 So.2d at 878. These hybrid representation issues arise when the arrangement allowed by the trial court falls somewhere between counsel providing the entire legal defense and the defendant acting as his only legal representative.
In the instant case, defendant analogizes his situation to that of the defendant in State v. Dupre, 500 So.2d at 873, wherein this court reversed the defendant's conviction after finding that the trial court erred by not determining that the defendant knowingly and intelligently waived the right to counsel before being allowed to represent himself at trial. In State v. Dupre, the defendant had the benefit of retained counsel to serve as an advisor, and counsel partially represented the defendant at trial by arguing some motions, making objections, examining some witnesses, and assisting in the closing argument. Although the attorney partially represented Dupre, we held that Dupre was not afforded the benefits of legal representation because Dupre performed many, if not most, of "those functions that are at the core of the lawyer's traditional role." 500 So.2d at 877. Dupre formulated his own trial strategy, determined his theory of defense, chose the witnesses to subpoena and to call to the stand, decided the questions to be asked, examined several of the witnesses, and performed the opening and closing statements. Thus, we concluded that Dupre had not been afforded the benefits of legal representation. Because the record did not show that Dupre intelligently and voluntarily waived the right to counsel, we reversed the conviction and remanded for a new trial.
*278 In the instant case, we first must determine whether the court's recognition of defendant as co-counsel and defendant's participation in his defense resulted in defendant's waiver of his right to counsel. Considering the facts of this case, we find that defendant asserted a right to self-representation. Although defendant's request to serve as "co-counsel" was not an unequivocal demand for self-representation, see United States v. Treff, 924 F.2d 975, 979 & n. 6 (10th Cir.), cert. denied, ___ U.S. ___, 111 S.Ct. 2272, 114 L.Ed.2d 723 (1991), he performed many of the functions that an attorney traditionally performs. He presented part of the opening statement, conducted a portion of the cross-examination of two key witnesses, and partially argued some legal issues. While defendant's attorney apparently was the controlling strategist in the case and performed many of the core functions of a lawyer, it is apparent that the attorney had his own agenda and that defense counsel and defendant did not always agree on the presentation of the defense. Under these circumstances, it was incumbent upon the trial court to advise defendant of the dangers and disadvantages of self-representation and to determine whether defendant's waiver of counsel was voluntary and intelligent.
If a trial court elects to face the risks associated with hybrid representation and allows a defendant to proceed as cocounsel, the court must determine that the defendant knowingly and intelligently waives the right to counsel for those times where the defendant represents himself, while at the same time assuring that defense counsel's role does not conflict with defendant's request to participate in his legal representation. In the instant case, the court granted defendant's request to serve as co-counsel, but made an insufficient effort to prevent the problems inherent in such an arrangement. Accordingly, defendant's convictions and sentences must be vacated, and this case must be remanded to the district court for a new trial.
Because we reverse defendant's convictions on this ground, it is unnecessary for us to review the remaining assignments of error, which relate to issues which arose prior to and during the trial or in connection with the sentencing.

CONCLUSION
For the above reasons, defendant's convictions and sentences are vacated, and the case is remanded to the district court for a new trial.
CONVICTIONS AND SENTENCES VACATED. REMANDED WITH ORDER.
GONZALEZ, J., dissents and will assign reasons.