**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 21, 2010

Lyle W. Cayce
Clerk

No. 09-30196

CLARENCE RANDOLPH, JR.,

Petitioner - Appellant

v.

BURL CAIN, WARDEN, LOUISIANA STATE PENITENTIARY,

Respondent - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:08-CV-1982

Before BARKSDALE, DENNIS, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Proceeding *pro se*, Clarence Randolph, Jr., Louisiana prisoner #480981, challenges the denial of 28 U.S.C. § 2254 habeas relief, regarding his state-court convictions for aggravated rape and aggravated incest involving his 13-year-old step-daughter. Randolph has been granted a certificate of appealability (COA) on two issues: whether, for trial, he knowingly and intelligently waived his right to counsel, in the light of the trial court's failure to conduct a hearing pursuant to *Faretta v. California*, 422 U.S. 806 (1975) (holding criminal defendants have

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-30196

constitutional right to self-representation, and when accused manages own defense such that he invokes that right, he must knowingly and intelligently forgo his right to counsel and be made aware of dangers of self-representation) (the *Faretta* claim); and whether Randolph's counsel on direct appeal rendered ineffective assistance by failing to raise the *Faretta* claim (IAC claim). AFFIRMED.

## I.

Approximately a year before his trial in March 2004, Randolph filed a *pro se* motion seeking "to enroll and participate at trial as co-counsel of record", citing *Faretta*. Randolph's motion noted he was represented by court-appointed counsel and maintained: "in order for [Randolph] to adequately and effectively present his defense, he must be allowed to directly and actively participate in the proceedings during trial as co-counsel of record".

At a hearing on that motion on 14 April 2003, the trial court: confirmed Randolph filed the motion; confirmed neither the State nor Randolph's counsel had any objection to his serving as "co-counsel"; and granted the motion. After the court did so, however, the State cautioned the court: "It's important, [it] may be required that the court represent to the defendant the dangers of self-representation". The court replied: "Yes, but he's also represented".

On 3 November 2003, Randolph filed a *pro se* motion, expressing dissatisfaction with appointed counsel and requesting appointment of new counsel. The motion was granted.

Randolph's counsel conducted the vast majority of the March 2004 trial, except that Randolph cross-examined two of the State's four witnesses: the victim (step-daughter) and her mother. (He also objected to jury polling; that objection was sustained.) Randolph was convicted for aggravated rape and aggravated incest. That April, he was sentenced to life in prison, without parole, for the former, and to a concurrent 20-year term of imprisonment for the latter.

Through counsel, Randolph raised several issues on direct appeal, but they did not include either the *Faretta* or, of course, IAC claim for which he has been granted a COA. In May 2005, the state intermediate appellate court affirmed. *State v. Randolph*, 903 So. 2d 23 (La. App. 1 Cir. 2005) (unpublished). Likewise, in February 2006, the Louisiana Supreme Court denied Randolph's application for writ of certiorari, without opinion. *See State v. Randolph*, 924 So. 2d 166 (La. 2006).

In January 2007, Randolph filed, *pro se*, an application for post-conviction relief in the state trial court. Randolph asserted: the trial court, in violation of *Faretta*, failed to determine whether he knowingly waived his right to counsel (as noted, the *Faretta* claim); and his counsel on direct appeal rendered ineffective assistance by failing to raise the *Faretta* claim (as noted, the IAC claim). Randolph's application was denied that February, without written reasons. *See Randolph v. Cain*, No. 327872/3 (22nd Dist. La. 2007).

That March, Randolph appealed to the Louisiana intermediate appellate court. That April, the appeal was summarily denied, without opinion. *See State v. Randolph*, 2007 KW 0411 (La. App. 1 Cir. 2007).

That May, Randolph filed a writ application with the Louisiana Supreme Court. It was denied in March 2008, without opinion. *See State ex rel. Randolph v. State*, 977 So. 2d 902, 903 (La. 2008).

Later that month, Randolph, *pro se*, applied for federal habeas relief, pursuant to 28 U.S.C. § 2254. He raised numerous issues, including: the *Faretta* and IAC claims. The application was referred to a magistrate judge for report and recommendation. In January 2009, the magistrate judge recommended, *inter alia*, that Randolph was not entitled to relief on any of his claims.

For the *Faretta* claim, the magistrate judge recommended: it was not necessary for the trial court to ensure Randolph knowingly and intelligently waived counsel, because Randolph did not waive his right to counsel or

3

unequivocally exercise his Sixth Amendment right to represent himself. The magistrate judge recommended Randolph was seeking merely to act as "co-counsel", *not* lead-counsel. As such, the magistrate judge recommended: a *Faretta* warning was *not* required; and, concomitantly, there was *no* constitutional violation.

For the IAC claim, the magistrate judge recommended: "it [was] not reasonably probable that [Randolph's] appeal would have had a different outcome if appellate counsel [for the direct appeal] had raised the [*Faretta*] claim . . . ." The magistrate judge reiterated this recommendation was because Randolph had *no* constitutional right to proceed as "co-counsel".

On 3 February 2009, Randolph filed written objections to the report and recommendation. Six days later, the district court adopted it and dismissed Randolph's *habeas* petition. *See Randolph v. Cain*, No. 08-1982, 2009 WL 324057, at *1 (E.D. La. 9 Feb. 2009).

With his notice of appeal, Randolph filed a request for a COA and to proceed *in forma pauperis*. Among the issues for which a COA was requested were the *Faretta* and IAC claims. The district court granted Randolph a COA only for the *Faretta* claim.

Subsequently, Randolph requested a COA from our court on issues for which he had unsuccessfully requested a COA in district court. On 7 January 2010, our court granted a COA only for the IAC claim.

## II.

Accordingly, Randolph maintains: the district court violated his right to counsel by granting his motion to act as "co-counsel" at trial, without first warning him of the dangers of self-representation as required by *Faretta* (as noted, the *Faretta* claim); and his counsel on direct appeal was ineffective for failing to raise the *Faretta* claim (as noted, the IAC claim).

In reviewing this denial of federal habeas relief, the district court's findings of fact are reviewed for clear error; its conclusions of law, *de novo*. *E.g.*,

4

*Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010).  Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, a federal court may *not* grant habeas relief to a state prisoner on a claim that was adjudicated on the merits by the state court unless the state-court decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding".  28 U.S.C. § 2254(d); *see, e.g.*, *Pierce v. Thaler*, 604 F.3d 197, 200 (5th Cir. 2010).

Because the determination of whether Randolph expressly and unequivocally, or constructively, invoked his right to self-representation, requiring *Faretta* safeguards, was solely dependent on the particular facts and circumstances of the case, our review of that issue is to determine whether the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding".  28 U.S.C. § 2254(d)(2); *see United States v. Long*, 597 F.3d 720, 723-24 (5th Cir. 2010) (citing cases and analyzing various verbal exchanges between defendants and judges in each case to determine if right to proceed *pro se* was invoked); *United States v. Cano*, 519 F.3d 512, 516 (5th Cir. 2008); *see also Stenson v. Lambert*, 504 F.3d 873, 882-883 (9th Cir. 2007) ("We hold that the [state court's] holding that [defendant's] request at trial [to proceed *pro se*] was 'not unequiviocal,' . . . was not 'based on an unreasonable determination of the facts.'" (citing 28 U.S.C. § 2254(d)(2))  (internal citation omitted)); *United States v. Mackovich*, 209 F.3d 1227, 1237 (10th Cir. 2000) (citing *Hamilton v. Groose*, 28 F.3d 859, 862 (8th Cir. 1994) for proposition that "the question of whether a defendant invoked his right to self-representation in an unequivocal manner is a question of fact".); *Fields v. Murray*, 49 F.3d 1024, 1032 (4th Cir. 1995) (holding the question "whether a defendant effectively invoked his right to self-representation" is "one of fact") (citing *Cain v. Peters*, 972 F.2d 748, 749 (7th Cir. 1992)).  "Under AEDPA [, 28

U.S.C. § 2254(e)(1)],  a state court's factual findings are presumed to be correct unless the habeas petitioner rebuts the presumption through clear and convincing evidence." *Nelson v. Quarterman*, 472 F.3d 287, 292 (5th Cir. 2006) (internal quotation marks and citations omitted).

On the other hand, as discussed in part II. B., the IAC claim is a legal issue and is, therefore, reviewed to determine whether the state-court decision was: "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States". 28 U.S.C. § 2254(d)(1); *see Schaetzle v. Cockrell*, 343 F.3d 440, 443-44 (5th Cir. 2003).

"Because a federal habeas court only reviews the reasonableness of the state court's ultimate decision, the AEDPA inquiry is not altered when, as in this case, state habeas relief is denied without an opinion." *Schaetzle*, 343 F.3d at 443; *see also Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001). "For such a situation, our court: (1) assumes the state court applied the proper [legal standard]; and (2) then determines whether its decision was . . . an . . . unreasonable application of that [standard]." *Schaetzle*, 343 F.3d at 443 (internal quotation marks and citations omitted).

### A.

A *Faretta* warning is required if defendant, either expressly or constructively, unequivocally invokes his right to proceed *pro se* and waives his right to counsel. *See Cano*, 519 F.3d at 516; *see also Long*, 597 F.3d at 724. In that regard, a criminal defendant has the constitutional right to waive his right to counsel and to present his own defense. *Faretta*, 422 U.S. at 817-22; *Long*, 597 F.3d at 723. The waiver of that right, of course, must be knowing and intelligent, and defendant must clearly and unequivocally request self-representation. *Long*, 597 F.3d at 723. Accordingly, once defendant unequivocally invokes the right of self-representation, whether expressly or constructively, the court must hold a *Faretta* hearing to ensure defendant's

request to proceed without counsel is knowing and voluntary. *See Faretta*, 422 U.S. at 835-36; *Cano*, 519 F.3d at 516.

Of critical importance here, although defendant possesses the right to counsel as well as the right to self-representation, there is *no* constitutional right to have both through a "hybrid representation" scheme. *See McKaskle v. Wiggins*, 465 U.S. 168, 182 (1984). And, as discussed, whether defendant expressly or constructively asserts an unequivocal request for self-representation is a factual determination. *Long*, 597 F.3d at 723-24; *Cano*, 519 F.3d at 516.

For the reasons that follow, it is obvious, under AEDPA, that the state-court decision for the *Faretta* claim was *not* "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding". *See* 28 U.S.C. § 2254(d)(2). As discussed, the record reflects that Randolph requested only to proceed at trial as "co-counsel", *not* as lead counsel; and he did *not* constructively invoke his right to proceed *pro se*.

"Requests that vacillate between self-representation and representation by counsel are equivocal." *State v. Berry*, 989 So. 2d 120, 128 (La. App. 5 Cir. 2008). Randolph gave *no* clear and unequivocal invocation of the right to self-representation. Randolph's pre-trial motion was *not* an unequivocal assertion of the right to proceed *pro se*; instead, it was an express, unequivocal request to participate as "*co-counsel*". Nor, as discussed, does the record reflect he constructively sought to proceed *pro se*. In short, Randolph had counsel at all times; and, under AEDPA, as stated *supra*, the state-court decision rejecting his *Faretta* claim was *not* "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding". 28 U.S.C. § 2254(d)(2).

For example, in *State v. Penson*, a decision relied on heavily by Randolph, a Louisiana intermediate appellate court held the trial court's recognition of defendant's request to proceed as "co-counsel", *mixed with* defendant's extensive participation in his defense, resulted in defendant's waiver of his right to

counsel. 630 So. 2d 274 (La. Ct. App. 1993). And, because Penson was not given his *Faretta* warning after waiving his right to counsel, the case was remanded for a new trial. *Id.* at 278.

Randolph's reliance on *Penson* is unavailing. Pre-trial, Penson filed a *pro se* motion to join as "co-counsel" because of conflicts with his attorney. *Id.* at 276. Subsequently, Penson filed two *pro se* motions, one of which was to remove his attorney and have new counsel appointed. *Id.* At trial, Penson presented part of the opening statement, conducted part of the cross-examination of two State witnesses, moved for a "continuance", and offered legal arguments concerning the admission of evidence and witness sequestration. *Id.* Penson also made arguments on post-trial motions in a hearing. *Id.*

The *Penson* appellate court noted:

> When a defendant has exercised his right to self-representation, the court may appoint "standby counsel" to aid the defendant and to be available to represent the defendant in the event the right of self-representation is terminated. *See Faretta*, 422 U.S. at 834 n. 46 . . . . When the trial court allows this kind of arrangement, the defendant acts as his only legal representative, and counsel merely advises the defendant. When an attorney is appointed as an advisor *under these circumstances*, the accused must knowingly abandon his right to be represented by counsel.

*Id.* at 277 (internal citation omitted) (emphasis added). Although Penson's counsel was heavily involved, the court found it "apparent that the attorney had his own agenda and that defense counsel and defendant did not always agree on the presentation of the defense". *Id.* at 278. In fact, Penson even asserted his attorney, the judge, and assistant district attorney were in collaboration to "sell him out". *Id.* at 276. The court held: "under these circumstances", the trial court was required to warn defendant of the dangers of self-representation. *Id.* at 278. The court found: "Although defendant's request to serve as 'co-counsel'

was not an unequivocal demand for self-representation, . . . he performed *many* of the functions that an attorney traditionally performs". *Id*. at 278. (emphasis added). The court further held: "*Considering the facts of this case*, we find that defendant asserted a right to self-representation". *Id*. at 278 (emphasis added).

*Faretta* requires the claimed hearing "[w]hen an accused *manages his own defense*". 422 U.S. at 835 (emphasis added); *see also Cano*, 519 F.3d at 516 (holding defendant may waive right to counsel through subsequent conduct). Although Penson was involved in his trial to the extent of rendering his counsel "stand-by" and managing his own defense, Randolph's involvement in his trial did, as discussed, *not* rise to such a level—far from it. Randolph's actions during trial were limited, and there is *no* indication counsel's performance was *not* in accord with his wishes.

As another example of the factual inquiry made necessary by *Faretta*, our court held defendant invoked his self-representation right, triggering the need for a *Faretta* warning, when, in the middle of trial, defendant expressed dissatisfaction with his counsel's performance, and was permitted to ask witnesses questions his counsel refused to ask. *See United States v. Davis*, 269 F.3d 514, 519-20 (5th Cir. 2001). In *Davis*, defendant questioned 14 of the 19 witnesses examined by the defense, made a proffer of potential witness testimony with the assistance of counsel, and also made closing argument. *Id*. at 517. Defense counsel was excused by the court from making or responding to objections, although he objected to one witness, responded to the offer of Government evidence, moved for an acquittal, and also made a closing argument. *Id*. Our court held, *under those circumstances*, that the representation sought by defendant, even if it *could have been* characterized as "hybrid", did rise to the level of self-representation, mandating a waiver of defendant's Sixth Amendment right to counsel satisfying the *Faretta* safeguards. *Id*. at 520 (the court implied Davis' representation was more akin to "standby assistance of counsel" than hybrid representation).

As discussed, unlike *Davis*, where defense counsel largely stood by as an advisor while defendant conducted the trial, Randolph's counsel conducted his entire trial except for the cross-examination of two Government witnesses. Randolph's counsel determined the controlling trial strategy, conducted jury voir dire, made all technical and legal arguments, conducted all bench conferences, made objections throughout trial, and presented closing argument. Randolph did *not* request his counsel be relieved during trial, he never expressed dissatisfaction with the representation provided by his counsel at trial, and he never took over the management of his defense. There is *no* indication of a conflict between Randolph and his counsel at trial or a disagreement with defense counsel's representation. Randolph's counsel was *not* "stand-by" as was counsel in *Davis*.

In sum, the record does not support finding Randolph "manage[d] his own defense", thereby invoking his right to self-representation. Therefore, again, the state-court decision rejecting the *Faretta* claim was *not* "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding". 28 U.S.C. § 2254(d)(2).

**B.**

IAC claims are mixed questions of law and fact and "should be reviewed under the [above-discussed] 'contrary to' and 'unreasonable application' prong of 28 U.S.C. § 2254(d)[(1)]". *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). Accordingly, Randolph's IAC claim is analyzed to determine whether the state-court decision was: "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States". 28 U.S.C. § 2254(d)(1).

"[T]he applicable 'clearly established Federal law as determined by the Supreme Court of the United States'—against which to measure the state court's decision—is [of course, stated] in *Strickland v. Washington*, 466 U.S. 668 (1984) (interpreting Sixth Amendment right to counsel)". *Schaetzle*, 343 F.3d 443-44

(citations omitted). "To succeed in state habeas court on his IAC claim, pursuant to the 'clearly established Federal law' found in *Strickland*, [Randolph] was required to show . . . : (1) appellate counsel's performance was deficient; and (2) this performance resulted in prejudice." *Id.* at 444; *see Strickland*, 466 U.S. at 687. Again, we determine only whether the state-court decision rejecting the IAC claim was "unreasonable" under the above-stated AEDPA standard. *See Schaetzle*, 343 F.3d at 444 (the test "is not whether [defendant] made that [IAC] showing . . . [but] whether the state court's decision—that [defendant] did *not* make the *Strickland*-showing—was contrary to, or an unreasonable application of [*Strickland*]") (emphasis in original).

In state court, to show appellate counsel's performance was deficient, Randolph was required to show: counsel's failure to raise the *Faretta* claim was objectively unreasonable; and, if counsel had raised it, "there was a *reasonable probability* that, but for counsel's deficient performance, [Randolph] would have prevailed on direct appeal". *Id.* at 445, 448 (emphasis in original). Needless to say, Randolph's IAC claim fails under our limited AEDPA standard of review, because his *Faretta* claim fails under that standard. Counsel's performance on direct appeal was not ruled ineffective by the state court. For the above-discussed reasons for why that decision was not found wanting under AEDPA for the *Faretta* claim, it is not wanting under AEDPA for this IAC claim. In sum, for the IAC claim, the state-court decision was *not* "contrary to, or . . . an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States". 28 U.S.C. § 2254(d)(1).

### III.

For the foregoing reasons, the denial of habeas relief is AFFIRMED.

DENNIS, Circuit Judge, concurring in the judgment.

I write separately in order to clarify a point regarding the proper analysis of the type of claim that is at issue in this appeal. In *Faretta v. California*, 422 U.S. 806 (1975), the Supreme Court established that a trial court has two specific obligations toward a defendant who desires to conduct his own defense. First, if a defendant "clearly and unequivocally declare[s] to the trial court that he want[s] to represent himself and [does] not want counsel," then the court is obligated to permit him to exercise "his constitutional right to conduct his own defense." *Id.* at 835-36. Second, before a trial court grants a defendant's request to represent himself, it must ensure that the defendant is "made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Id.* at 835 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)).

Thus, a court can violate the requirements of *Faretta* in either of two ways: by *denying* a defendant's clear, unequivocal, timely request to represent himself, or by *granting* a defendant's request to represent himself but failing to ensure that he understands "the dangers and disadvantages of self-representation," *id*. These are two different errors that correspond to two distinct claims that can be made on appeal or on habeas. *Compare United States v. Long*, 297 F.3d 720, 722 (5th Cir. 2010) ("Long contends that the district court wrongfully denied him his right to represent himself."), *with United States v. Davis*, 269 F.3d 514, 516 (5th Cir. 2001) ("Davis contends that his Sixth Amendment right to counsel was violated because the district court did not sufficiently warn Davis of the perils of self-representation, and therefore Davis did not make a knowing and intelligent waiver of his right to counsel.").

This case involves the second type of *Faretta* claim: Randolph argues that the trial court erred by not making sure he understood the dangers of

self-representation before allowing him to participate in his own defense by cross-examining the victim and her mother. A defendant's participation in his own defense, even if assisted by a lawyer, can rise to a level that "entail[s] a waiver of his Sixth Amendment right to counsel that require[s] the safeguards specified in *Faretta*." *Davis*, 269 F.3d at 520; *see also* 3 Wayne R. LaFave et al., *Criminal Procedure* § 11.5(g), at 766-67 (3d ed. 2007) ("[S]ince hybrid representation is in part pro se representation, allowing it without a proper *Faretta* inquiry can create constitutional difficulties."). Therefore, the dispositive question on the underlying merits of Randolph's *Faretta* claim is whether his participation in his own defense amounted to self-representation requiring the trial court to warn him "of the dangers and disadvantages of self-representation." *Faretta*, 422 U.S. at 835.

In my view, the majority opinion tends to confuse the issue by engaging in a lengthy analysis of an irrelevant question: whether Randolph made a "clear and unequivocal assertion of the right to self-representation." Maj. Op. 6-10. That question would be important if this case involved a claim that a trial court erroneously *denied* a defendant's request to engage in self-representation. The majority opinion relies on several cases involving claims of that type, including *Long*, 297 F.3 Id 720; *United States v. Cano*, 519 F.3d 512 (5th Cir. 2008); *Stenson v. Lambert*, 504 F.3d 873 (9th Cir. 2007); *United States v. Mackovich*, 209 F.3d 1227 (10th Cir. 2000); *Fields v. Murray*, 49 F.3d 1024 (4th Cir. 1995) (en banc); *Hamilton v. Groose*, 28 F.3d 859 (8th Cir. 1994); and *Cain v. Peters*, 972 F.2d 748 (7th Cir. 1992). But the instant case does not involve such a claim. Thus, I think the majority opinion focuses on the wrong question. When a trial court *grants* a defendant's request to engage in self-representation, *Faretta* requires the court to ensure that he is "aware of the dangers and disadvantages of self-representation." 422 U.S. at 835. The degree of clarity of the defendant's request is irrelevant once the request has been granted.

Despite this partial disagreement with the majority opinion's analysis, I concur in the judgment for two reasons. First, as to Randolph's claim that the trial court allowed him to engage in self-representation without conducting a *Faretta* hearing, there is no "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), regarding whether a *Faretta* warning is required before a trial court allows a defendant to partially conduct his own defense in the particular manner that Randolph did. Therefore, we cannot grant habeas relief on this claim.

Second, as to Randolph's claim that he received ineffective assistance when his appellate counsel failed to raise the *Faretta* issue on direct appeal, we must apply a "highly deferential" level of scrutiny to counsel's performance. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). To obtain habeas relief, Randolph had to demonstrate to the Louisiana courts that his counsel on direct appeal was "objectively unreasonable in failing to present the [*Faretta*] issue." *Schaetzle v. Cockrell*, 343 F.3d 440, 445 (5th Cir. 2003). On federal habeas, the bar is even higher: "the test is whether the state [habeas] court's decision — that [Randolph] did not make the *Strickland*-showing — was contrary to, or an unreasonable application of, the standards, provided by the clearly established federal law (*Strickland*), for succeeding on his [ineffective assistance] claim." *Id*. at 444; *see* 28 U.S.C. § 2254(d)(1).

Randolph's ineffective assistance claim is not compelling enough to clear this bar. "Counsel need not raise every nonfrivolous ground of appeal." *Id*. at 445. "Often, factual differences will make authority easily distinguishable, whether persuasively or not. In such cases, it is not necessarily providing ineffective assistance of counsel to fail to construct an argument that may or may not succeed." *Id*. at 445 (quoting *United States v. Williamson*, 183 F.3d 458, 463 (5th Cir. 1999)). As the majority opinion explains, this case is at least arguably factually distinguishable from the

cases on which Randolph relies, including *United States v. Davis*, 269 F.3d 514 (5th Cir. 2001), and *State v. Penson*, 630 So. 2d 274 (La. Ct. App. 1993). Therefore, it is doubtful whether Randolph's appellate counsel's failure to raise the *Faretta* issue amounted to deficient performance under *Strickland*, and so the state habeas courts' rejection of Randolph's ineffective assistance claim was not an objectively unreasonable application of *Strickland*.

Accordingly, I agree with the majority that Randolph is not entitled to habeas relief.