KUHN, J.
 

 ^Defendant, Bobby Dewayne Kimble, and codefendant, Richard Stewart, were charged by bill of information with second degree kidnapping, a violation of La. R.S. 14:44.1 (count one), aggravated burglary, a violation of La. R.S. 14:60 (count two), and armed robbery, a violation of La. R.S. 14:64 (count three).
 
 [1]
 
 Defendant pled not guilty to all charges. Prior to trial, the State amended the bill of information to dismiss count one as to defendant only. On April 20, 2007, defendant filed a pro se motion to act as co-counsel. The trial court denied the motion without a hearing. Defendant was tried by a jury and convicted as charged on counts two and three.
 
 [2]
 
 
 *785
 
 For his conviction of aggravated burglary, defendant was sentenced to thirty years at hard labor. For his conviction of armed robbery, defendant was sentenced to imprisonment at hard labor for fifty years without benefit of parole, probation, or suspension of sentence. The trial court ordered that the sentences run concurrently. Defendant now appeals urging the following assignments of error by counseled and pro se briefs:
 

 Counseled Assignment of Error
 

 1. The trial court erred in refusing to permit the defendant to represent himself at trial.
 

 |
 
 ?Pro Se Assignments of Error
 

 1. Whether the sentences imposed violate the state and federal constitutions, which prohibit the imposition of cruel and unusual punishment, due to their excessiveness.
 

 2. Whether the out-of-court photographic identification procedure was suggestive and, thus, violated the defendant’s due process rights and tainted the in-court identification.
 

 We affirm defendant’s convictions and sentences.
 

 FACTS
 

 On April 17, 2006, Kevin Manns was at his home in the Crillion Apartments in Baton Rouge preparing for his work day. At approximately 8:00 a.m., as Manns was entering the shower, he heard his doorbell ring. Since he believed that it was the water delivery man calling, Manns decided to proceed with his shower with the understanding that the delivery man would simply return later. Moments later, Manns heard a loud noise. He exited the shower, wrapped a towel around himself and went to investigate. Manns observed an unfamiliar black male inside his residence, rummaging through his mail. Manns confronted the individual, asked him what he was doing inside his home and demanded that he leave. The man raised a long screwdriver towards Manns in a threatening manner. A younger black male also approached Manns from behind and placed an object toward his back.
 

 The perpetrators ordered Manns to the front of the apartment where the older perpetrator instructed Manns to lie face down. The older perpetrator stood over Manns, while the younger perpetrator went through the house gathering some of Manns’s personal belongings in a box. Later, when the older perpetrator suggested that they should leave the residence, the younger perpetrator indicated Rthat Manns was going with them. The younger perpetrator forced Manns to carry the box containing his personal belongings out of the residence. As the group walked towards Manns’s vehicle, the younger perpetrator, who was walking directly behind Manns, stated, “Don’t make me shoot you.” He then asked Manns how to unlock the vehicle. Manns told him he would need to go around to the driver’s side of the vehicle to manually unlock the vehicle. As the younger perpetrator went around the vehicle, Manns fled. He ran into the street and flagged down a passerby. Meanwhile, Manns observed the older perpetrator drive away in a silver sports utility vehicle and the younger one in Manns’s vehicle.
 

 Shortly thereafter, Officer Laura Mays, of the Baton Rouge Police Department, arrived at the Crillion Apartments to investigate. After speaking with the victim
 
 *786
 
 and other witnesses, Officer Mays contacted dispatch with a description of the vehicles. Approximately thirty minutes later, a gray sports utility vehicle with the same license plate number as the one the perpetrator left Manns’s apartment in was observed on Florida Boulevard. A chase ensued, when the officers attempted to stop the vehicle. The vehicle was eventually stopped, and Stewart was determined to be the driver. Stewart was returned to the scene, where Manns identified him as the younger perpetrator who participated in the burglary and robbery. Manns also identified a gold chain that Stewart was wearing as his personal property. Stewart eventually named defendant as the older individual who accompanied him at Manns’s apartment.
 

 COUNSELED ASSIGNMENT OF ERROR
 

 In his sole counseled assignment of error, defendant contends the trial court erred in summarily denying his request to act as co-counsel without a hearing. He maintains that the trial court was required to conduct a hearing to determine whether he understood the risks associated with self-representation and whether he was competent to act as his own counsel.
 

 A defendant’s right to the assistance of counsel is guaranteed by both our state and federal constitutions.
 
 See
 
 U.S. Const, amends. VI & XIV; La. Const, art. I, § 13;
 
 State v. Brooks,
 
 452 So.2d 149, 155 (La.1984) (on rehearing) (citing
 
 Gideon v. Wainwright,
 
 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)). Louisiana Code of Criminal Procedure article 511 also provides for a defendant’s right to counsel as follows, “The accused in every instance has the right to defend himself and to have the assistance of counsel. His counsel shall have free access to him, in private, at reasonable hours.” The federal constitution further grants an accused the right of self-representation.
 
 Faretta v. California,
 
 422 U.S. 806, 807, 95 S.Ct. 2525, 2527, 45 L.Ed.2d 562 (1975);
 
 State v. Penson,
 
 630 So.2d 274, 277 (La.App. 1st Cir.1993). An accused has the right to choose between the right to counsel and the right to self-representation.
 
 State v. Bridgewater,
 
 2000-1529, p. 17 (La.1/15/02), 823 So.2d 877, 894,
 
 cert. denied,
 
 537 U.S. 1227, 123 S.Ct. 1266, 154 L.Ed.2d 1089 (2003). A defendant who exercises the right of self-representation must knowingly and intelligently waive the right to counsel.
 
 State v. Penson,
 
 630 So.2d at 277. When a defendant requests the right to represent himself, his technical legal knowledge is not relevant in determining if he is knowingly exercising the right to defend himself. A trial judge confronted with ah |fiaccused’s unequivocal request to represent himself need determine only if the accused is competent to waive counsel and is “voluntarily exercising his informed free will.”
 
 State v. Santos,
 
 99-1897, pp. 2-3 (La.9/15/00), 770 So.2d 319, 321 (per curiam) (quoting
 
 Faretta,
 
 422 U.S. at 835, 95 S.Ct. at 2541).
 

 In the instant case, the record reflects that the trial court appointed the Office of the Public Defender to represent defendant at his June 14, 2006 arraignment. Defendant was represented by counsel from the Public Defender’s Office at every court appearance thereafter. On April 20, 2007, defendant filed a pro se motion requesting that he be allowed to act as co-counsel at his trial. In the motion, he asserted, “Under the provision of La. C.Cr.P. Article 511 he is entitled to defend himself and to have the assistance of counsel.” On April 24, 2007, the trial court denied the motion without a hearing. The court noted on the written motion that “[defendant] is represented by counsel.” Defendant did not re-urge the motion to act as co-counsel at any point during the trial.
 

 
 *787
 
 While a defendant has the right to counsel as well as the right to self-representation, he has no constitutional right to be both represented and representative.
 
 State v. Bodley,
 
 394 So.2d 584, 593 (La. 1981);
 
 see also McKaskle v. Wiggins,
 
 465 U.S. 168, 183, 104 S.Ct. 944, 953, 79 L.Ed.2d 122 (1984)
 
 (“Faretta
 
 does not require a trial judge to permit ‘hybrid’ representation of the type [petitioner] was actually allowed”). Under a “hybrid” form of representation, the defendant and counsel act as co-counsel with each speaking for the defense during different phases of the trial.
 
 See
 
 Wayne R. LaFave, Criminal Procedure § 11.5(g), p. 765 (3d ed.2007).
 

 17Although a trial court is not prohibited from using hybrid arrangements, such arrangements present inherent difficulties. If the defendant has not waived the right to counsel and the attorney provides only partial representation, the issue of whether the accused was afforded adequate legal representation might be raised. If the accused has adequately waived his right to counsel, but counsel actively participates in the defense, questions of violation of the accused’s right to self-representation might result.
 
 See State v. Dupre,
 
 500 So.2d 873, 878 (La.App. 1st Cir.1986),
 
 wiit denied,
 
 505 So.2d 55 (La.1987). These hybrid representation issues arise when the arrangement allowed by the trial court falls somewhere between counsel providing the entire legal defense and the defendant acting as his only legal representative.
 

 After our review of the record in this case, we find no error in the trial court’s denial of defendant’s motion to act as co-counsel in this case. Defendant’s request to represent himself was not a clear and unequivocal assertion of the right to self-representation. Defendant did not unequivocally indicate to the trial court that he wanted to represent himself in this prosecution without the assistance of any counsel. Instead, he requested to be allowed to act as co-counsel, in conjunction ■with his court-appointed attorney. As previously noted, an accused has the right to choose between the right to counsel and the right to self-representation. Furthermore, defendant has not alleged, and we have not found, any way in which his defense was prejudiced because he did not participate as co-counsel. Therefore, the trial court did not err in denying defendant the right to act as co-counsel under the facts and circumstances of this case.
 

 This assignment of error lacks merit.
 

 IJPRO SE ASSIGNMENT OF ERROR 1
 

 EXCESSIVE SENTENCES
 

 In his first pro se assignment of error, defendant contends the trial court erred in imposing unconstitutionally excessive sentences. He asserts the maximum sentence for aggravated burglary and the fifty-year sentence for armed robbery constitute needless infliction of pain and suffering under the facts and circumstances of this case.
 

 Article I, Section 20 of the Louisiana Constitution prohibits the imposition of excessive punishment. A sentence is unconstitutionally excessive if it is grossly disproportionate to the severity of the offense or is nothing more than a purposeless and needless infliction of pain and suffering.
 
 State v. Dorthey,
 
 623 So.2d 1276, 1280 (La.1993). A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice.
 
 State v. Hogan,
 
 480 So.2d 288, 291 (La.1985). Although a sentence may be within statutory limits, it may violate a defendant’s constitutional right against excessive punishment and is subject to appellate review.
 
 State v. Sepulvado,
 
 367 So.2d 762, 767 (La.1979);
 
 State v. Lanieu,
 
 98-
 
 *788
 
 1260, p. 12 (La.App. 1st Cir.4/1/99), 734 So.2d 89, 97,
 
 writ denied,
 
 99-1259 (La.10/8/99), 750 So.2d 962. However, a trial court is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed by it should not be set aside as excessive in the absence of manifest abuse of discretion.
 
 State v. Lobato,
 
 603 So.2d 739, 751 (La. 1992). Maximum sentences are generally reserved for the most serious violations of the relevant statute and for the |9worst type of offenders.
 
 State v. Manee,
 
 2000-1903, p. 4 (La.App. 1st Cir.5/11/01), 797 So.2d 718, 721.
 

 A trial court’s reasons for imposing sentence, as required by La.C.Cr.P. art. 894.1, are an important aid to this court when reviewing a sentence alleged to be excessive.
 
 State v. McKnight,
 
 98-1790, p. 25 (La.App. 1st Cir.6/25/99), 739 So.2d 343, 359,
 
 writ denied,
 
 99-2226 (La.2/25/00), 755 So.2d 247. Remand for full compliance with Article 894.1 is unnecessary when a sufficient factual basis for the sentence is shown.
 
 State v. Landos,
 
 419 So.2d 475, 478 (La.1982).
 

 As previously noted, defendant was convicted of aggravated burglary and armed robbery. A conviction of aggravated burglary carries a potential penalty of imprisonment at hard labor for not less than one year nor more than thirty years. La. R.S. 14:60. Defendant received the maximum sentence for this offense. The penalty for armed robbery is imprisonment at hard labor, without benefit of probation, parole, or suspension of sentence, for not less than ten and not more than ninety-nine years. La. R.S. 14:64(B). Defendant was sentenced to imprisonment at hard labor for fifty years without benefit of probation, parole, or suspension of sentence.
 

 Defendant asserts he should have received lesser sentences in this case. While he seems to concede that a term of imprisonment is warranted, defendant suggests that his age, his lack of any juvenile criminal history, and his “minor felony convictions” as an adult (which he claims do not include any crimes of violence) do not support the imposition of the lengthy sentences.
 

 At the sentencing hearing, prior to imposing the sentence, the trial court indicated that it received and reviewed a presen-tence investigation report (PSI) 110containing information on defendant’s personal and criminal history. The trial court noted that defendant was fifty-one years old and classified as a fifth felony offender. The court then reviewed the details of defendant’s extensive criminal history, which included convictions dating back to 1980 and numerous unsatisfactory probation and/or parole periods. At the time of the commission of the instant offenses, defendant was on parole supervision. Defendant was arrested on January 23, 2003, on charges of simple burglary, battery of a police officer, and resisting an officer. On May 12, 2003, defendant was convicted of simple burglary and sentenced to imprisonment at hard labor for six years. Defendant was released on parole supervision on January 24, 2006. Less than three months after his release from prison, defendant was arrested for committing the instant offenses of aggravated burglary and armed robbery. Considering defendant’s lengthy criminal history and his unsatisfactory performance while on probation and/or parole, the PSI concluded defendant is a “career criminal” and recommended imposition of sentences of imprisonment at the upper end of the maximum penalty on each conviction. The PSI further recommended that the sentences be ordered to be served consecutively.
 

 
 *789
 
 After reviewing defendant’s entire criminal history during the sentencing hearing, the trial court concluded defendant was in need of correctional treatment in a custodial environment. The court stated, “Prisons are made for people who can’t follow the law like this.” Despite the PSI’s recommendation of maximum or near-maximum, consecutive sentences, the court imposed a mid-range sentence on the armed robbery conviction and ordered that the sentences run concurrently.
 

 |nWe have reviewed the sentences imposed by the trial court and do not find either sentence to be excessive under the facts and circumstances of this case. Considering the circumstances of the offenses and defendant’s extensive criminal record, we find no abuse of discretion by the trial court in imposing the sentences upon defendant. The thirty-year maximum sentence for aggravated burglary and the mid-range fifty-year sentence for armed robbery are clearly supported by the record. The sentences are neither grossly disproportionate to the severity of the offenses, nor so disproportionate as to shock our sense of justice. This defendant, who has repeatedly shown absolutely no regard for the law and has committed similar offenses, is the worst type of criminal offender and poses an unusual risk to public safety. Therefore, considering the violent nature of these offenses, coupled with defendant’s propensity to continue criminal activity and his failure to respond to past rehabilitation efforts, we conclude that the sentences imposed herein, including the maximum aggravated burglary sentence, are not unconstitutionally excessive. This assignment of error lacks merit.
 

 PRO SE ASSIGNMENT OF ERROR 2
 

 DENIAL OF MOTION TO SUPPRESS IDENTIFICATION
 

 In this assignment of error, defendant contends the trial court erred in denying his motion to suppress the victim’s pretrial identification. Defendant asserts that because he was obviously older than the other individuals contained in the photographic array, the identification procedure was unduly suggestive and resulted in a substantial likelihood of irreparable misidentification.
 

 When a trial court denies a motion to suppress, factual and credibility determinations should not be reversed in the absence of a clear abuse of the trial 112court’s discretion, i.e., unless such ruling is not supported by the evidence.
 
 See State v. Green,
 
 94-0887, p. 11 (La.5/22/95), 655 So.2d 272, 281. ■ However, a trial court’s legal findings are subject to a
 
 de novo
 
 standard of review.
 
 See State v. Hunt,
 
 2009-1589, p. 6 (La.12/1/09), 25 So.3d 746, 751.
 

 A defendant attempting to suppress an identification must prove
 
 both
 
 that the identification itself was suggestive and that there was a likelihood of misiden-tifieation as a result of the identification procedure.
 
 State v. Prudholm,
 
 446 So.2d 729, 738 (La.1984).
 
 See
 
 La.C.Cr.P. art. 703(D). An identification procedure is unduly suggestive if, during the procedure, a witness’s attention is focused on the defendant.
 
 State v. Hawkins,
 
 572 So.2d 108, 112 (La.App. 1st Cir.1990). For example, distinguishing marks on the photographs may single out defendant.
 
 State v. Guillot,
 
 353 So.2d 1005, 1008 (La.1977),
 
 unit denied,
 
 367 So.2d 864 (La.1979). However, even should the identification be considered suggestive, this alone does not indicate a violation of the defendant’s right to due process. It is the likelihood of misidentification that violates due process, not merely the suggestive identification procedure.
 
 See State v. Jones,
 
 94-1098, p. 6 (La.App. 1st Cir.6/23/95), 658 So.2d 307,
 
 *790
 
 311,
 
 writ denied,
 
 95-2280 (La.1/12/96), 666 So.2d 320. A trial court’s determination of the admissibility of identification evidence is entitled to great weight and will not be disturbed on appeal in the absence of an abuse of discretion.
 
 State v. Reed,
 
 97-0812, p. 5 (La.App. 1st Cir.4/8/98), 712 So.2d 572, 576,
 
 writ denied,
 
 98-1266 (La.11/25/98), 729 So.2d 572.
 

 In determining whether a photographic identification was reliable, the factors to be considered are: (1) the opportunity of the witness to view the criminal | isat the moment of the crime; (2) the degree of attention of the witness; (3) the accuracy of the prior description of the criminal; (4) the level of certainty of the identification; and (5) the elapsed time between the crime and the confrontation.
 
 Manson v. Brathwaite,
 
 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977).
 

 In this case, we have thoroughly reviewed the record to evaluate the identification in dispute. The record evidence does not indicate that the photographic identification procedure was unduly suggestive. At the hearing on the motion to suppress, Detective Larry Walters, Jr. of the Baton Rouge Police Department testified that after Stewart was apprehended, he was returned to the scene where he was positively identified by the victim as a participant in the offenses. Stewart identified defendant, by name, as the older individual who assisted him in burglarizing Manns’s residence and robbing him. Upon receiving this information, Detective Walters was able to locate his previous booking photograph. Based upon the physical characteristics shown in defendant’s photograph, Detective Walters then requested, and the computer generated, a six-person photographic line-up of individuals with similar features. According to Detective Walters, the computer also arranged the photographs in random order. Once the line-up was prepared, it was shown to Stewart, who identified the defendant’s photograph as that of the individual he identified as his accomplice. A separate copy of the line-up was then presented to Manns. Manns quickly identified defendant as the older perpetrator.
 

 We have reviewed the photographic lineup and find the photographs used depict individuals with sufficient resemblance of characteristics (e.g., hair length, |14facial hair, skin color and complexion, build and facial features such as chin, nose, etc.) to reasonably test identification. Thus, there does not appear to be any error in the trial court’s ruling and, therefore, we find no merit to this assignment of error.
 

 Even assuming the photo line-up identification were suggestive, there was not a substantial likelihood of irreparable misidentification. At the trial, Manns testified that his identification of defendant was based upon his recollection of the events that transpired at his residence. Manns’s testimony confirms that during the commission of the offenses, the victim had ample opportunity to view the older perpetrator’s face. There was no indication that the older perpetrator wore a mask or otherwise attempted to conceal his identity. Manns indicated that the lighting inside the apartment was bright, and he intentionally paid close attention to the physical characteristic of the perpetrators. Most importantly, codefendant Stewart identified defendant by name as his accomplice. Therefore, a review of the overall circumstances indicates the identification in this case was reliable; therefore, the trial court correctly denied the motion to suppress.
 

 DECREE
 

 For these reasons, we affirm the convictions and sentences of defendant, Bobby Dewayne Kimble.
 

 
 *791
 
 CONVICTIONS AND SENTENCES AFFIRMED.
 

 [1]
 

 . Stewart was also charged with aggravated obstruction of a highway of commerce, a violation of La. R.S. 14:96 (count four).
 

 [2]
 

 . Defendant filed a motion to sever his case from that of codefendant Stewart. On January 13, 2009, the trial court granted the motion. Defendant was tried separately. Information contained in defendant’s PSI report reflects that Stewart pled guilty to aggravated obstruction of a highway, second degree kidnapping, aggravated burglary, and armed robbery. He was sentenced to fifteen years for aggravated obstruction of a highway, sev
 
 *785
 
 enteen years (two years without benefit of parole, probation, or suspension of sentence) for second degree kidnapping, seventeen years for aggravated burglary, and seventeen years, without benefit of probation, parole or suspension of sentence, for armed robbery.